**HUGAS CORP.**

v.

**John R. VEADER, Jr. et al.**

**No. 81-2-M.P.**

Supreme Court of Rhode Island.

Feb. 22, 1983.

Letts, Quinn & Light, Daniel J. Murray, Joseph DeAngelis, Robert D. Fine, Providence, for petitioner.

Hinckley, Allen, Salisbury & Parsons, Gregory L. Benik, Providence, for respondents.

## OPINION

BEVILACQUA, Chief Justice.

This matter is before us on a petition for certiorari to review a Superior Court judgment affirming a decision of the respondent Zoning Board of Review of the Town of Barrington (the board). The board had denied the petitioner's application for an exception or variance from the restrictions of a Barrington zoning ordinance. On appeal to the Superior Court the trial justice found that the board had properly denied the application as one for a variance. The petitioner petitioned the court for the issuance of a writ of certiorari to review that part of the judgment which determined that its use of the property was nonconforming and that the variance standard was the correct standard to apply. We granted the petition, *Hugas Corp. v. Veader*, R.I., 427 A.2d 345 (1981), and issued the writ on March 12, 1981; pursuant thereto, all pertinent records have been certified to this court.

The record discloses that petitioner, Hugas Corp. (Hugas), owns a parcel of real estate designated as assessor's plat No. 23, lot No. 332, zone C-Commercial and located at 227 County Road in the town of Barrington. A lessee of the property, Mr. David A. Sartrys, operates an Arco gasoline service station thereon.

In 1953 the town council granted the petition of Hugas's predecessor in title to erect a "garage repair shop." The council had determined that such a use was a legal use within the Business-D district of the existing zoning code. In 1961, the town council revised the zoning ordinance and reclassified the Business-D district as a C-Commercial zone. The revised ordinance specified the permitted uses for a C-Commercial zone, and gasoline service stations were not separately listed among them. However, subsection (c) of § 4-6-2 of the 1961 ordinance permitted "[u]ses in the conduct of any other business enterprises engaging exclusively in sales at retail * * *."

The petitioner purchased the subject parcel of real estate in 1968, and subsequently the town council granted petitioner's request for a special exception to permit the demolition of the previous building and the construction of a new gasoline service station facility. Thereafter, the town council further revised the zoning ordinance in 1971 and eliminated subsection (c) of § 4-6-2. The 1971 revision did not specifically include gasoline service stations under the permitted uses within a C-Commercial zone but did provide for a special exception for uses in the conduct of any business "engaging exclusively in sales at retail."

On July 25, 1978, petitioner submitted to the board an application seeking an exception or variance to permit the installation of a canopy within the required thirty-foot setback and the replacement of the existing signs with a single combination price sign that would exceed the permitted size-limitation for any one sign. The board heard petitioner's application on August 17, 1978, and November 16, 1978. At the hearing, petitioner supported its application through the testimony of three witnesses and a written statement from a qualified expert in the area of real estate appraisals. There were no remonstrants at either the August 17 hearing or the November 16 hearing. After consideration, the board voted unanimously to deny the application.

The board stated that petitioner's use of the property is a nonconforming use. Thus, the board reasoned that it must consider petitioner's application in light of §§ 1–5–6(a) and (b) of the Barrington zoning ordinance.[1] Concluding that petitioner's application was an attempt to vary the provisions of the ordinance relating to use, the board treated the application as one for a variance. The board found that petitioner did not introduce any evidence indicating that failure to approve the application would deprive it of all beneficial use of the property. In particular, the board determined that the applicant had not shown any evidence that it was not profitably utilizing the property or that it could not profitably utilize the property unless the board granted the application. Therefore, the board denied the application in regard to the installation of a canopy.

Furthermore, the board stated that the existing sign did not comply with the sign ordinance and neither would the proposed sign. Holding that signs are not permitted in connection with nonconforming uses, the board required that petitioner establish that failure to grant relief would deprive it of all beneficial use of the property. Because the board determined that petitioner had not presented any such evidence, it denied the application regarding the proposed sign change.

The petitioner thereupon appealed to the Superior Court for the County of Providence in accordance with the provisions of G.L.1956 (1980 Reenactment) § 45–24–20.

After a hearing, the trial justice denied the appeal.

The trial justice pointed out that with the 1961 revision of the ordinance petitioner's use of the property became a nonconforming use. However, petitioner contended that its pre-1971 use of the property was a permitted use under subsection (c) of § 4–6–2 [2] of the 1961 ordinance on the theory that a gasoline service station falls within the subsection's allowance as a permitted use any business "engaging exclusively in sales at retail." In addition, petitioner asserted that its present use of the property was permitted under § 1–15–2–n(k) of the present ordinance.[3] The trial justice rejected petitioner's contention because subsection (c) did not mention services but only "retail and sale of goods," and the town council had originally permitted petitioner's predecessor to use the land for "gasoline service and repairs." Determining that petitioner had failed to establish that its use was permitted or "conditionally permitted" (by virtue of a special exception) rather than nonconforming, the trial justice held that the board had used the correct standard in denying the application.

The sole issue is whether the Zoning Board applied the proper standard when considering petitioner's application. The petitioner contends that the board and the trial justice erred in determining petitioner's status as a nonconforming use and in applying §§ 1–5–6(a) and (b) of the Barrington zoning ordinance. The petitioner

1. Sections 1–5–6(a) and (b) of the Barrington zoning ordinance provide that:
 "(a) A building or structure nonconforming as to regulations for use shall not be added to or enlarged in any manner unless such building or structure, including such addition and enlargement is made to conform to the use regulations of the zone in which it is located, except that an established two family dwelling may, consistent with other provisions of this [o]rdinance, be enlarged, but not to increase the number of family units.
 "(b) A building or structure nonconforming as to yard regulations shall not be added to nor enlarged in any manner, except for roof dormers which shall not project beyond the

existing building alignment, unless such addition or enlargement conforms to all the regulations of the zone in which it is located."

2. Subsection (c) of § 4–6–2 of the 1961 ordinance specified as a permitted use any business "engaging exclusively in sales at retail."

3. The Barrington zoning ordinance provided in § 1–15–2–n(k) that the board may grant a special exception in a C-Commercial zone for "[u]ses in the conduct of any business enterprises engaging exclusively in sales at retail and which are not listed as [p]ermitted [u]ses in [s]ection 1–10–2 and do not violate the provisions of [s]ection 1–4–3."

asserts that its use is a permitted use under § 1–15–2–n(k) of the Barrington ordinance, which provides that the board may grant a special exception in a C-Commercial zone for uses in the conduct of any business engaging "exclusively in sales at retail." Postulating that a gasoline service station is a "sale at retail" and is therefore a permitted use under § 1–15–2–n(k), petitioner maintains that the board and the trial justice incorrectly treated the application as one for a use variance. Furthermore, petitioner maintains that §§ 1–5–6(a) and (b) are violative of G.L.1956 (1980 Reenactment) § 45–24–10.

It is well established that in reviewing the action of a zoning board of review, the trial justice "must examine the entire record to determine whether 'substantial' evidence exists to support the board's findings." *Toohey v. Kilday*, R.I., 415 A.2d 732, 735 (1980) (quoting *DeStefano v. Zoning Board of Review*, R.I., 405 A.2d 1167, 1170 (1979)); *Apostolou v. Genovesi*, 120 R.I. 501, 507–09, 388 A.2d 821, 824–25 (1978). On certiorari to this court, "we apply the some or any evidence test and review the record to determine whether legally competent evidence exists to support the findings of the trial justice." *Toohey v. Kilday*, R.I., 415 A.2d 732, 735 (1980); *DeStefano v. Zoning Board of Review*, R.I., 405 A.2d 1167, 1170 (1979); *Dean v. Zoning Board of Review*, 120 R.I. 825, 831, 390 A.2d 382, 386 (1978).

 It is apparent from the record that in 1953 the town council permitted petitioner's predecessor to establish a gasoline service station upon determining that such a use was a legal use within the then-existing zoning ordinance. Specifically, the 1926 zoning code permitted in a Business-D district "[p]laces of [b]usiness of individuals, co-partnerships and corporations doing a wholesale or retail business * * *." In 1961, the town council revised the zoning ordinance and reclassified the Business-D district as a C-Commercial zone. Unlike

the Business-D district, the C-Commercial zone specifically listed the permitted uses. A gasoline service station was not listed as a permitted use. Subsection (c) of § 4–6–2 of the 1961 ordinance authorized as a permitted use any business "engaging exclusively in sales at retail." In 1971, the town council further revised the ordinance and again gas stations were not mentioned among the permitted uses. Moreover, the town concil eliminated as a permitted use businesses "engaging exclusively in sales at retail" but permitted for the granting of special exceptions for businesses "engaging exclusively in sales at retail." Thus, ample evidence existed to support the trial justice's conclusion that in 1961 petitioner's use became a nonconforming use because it was not a "business engaging exclusively in sales at retail."

The petitioner further contends that the board and the trial justice, having concluded that its use was nonconforming, incorrectly utilized the standard of review imposed upon an applicant seeking a variance. The board had considered the evidence presented by petitioner in light of §§ 1–5–6(a) and (b) of the ordinance and determined that petitioner sought to vary the provisions of the ordinance relating to use. Specifically, the board concluded that petitioner had failed to show that denial of the application would deprive it of all beneficial use of the property. It is petitioner's contention that if its use of the property was in fact nonconforming then the applicable section of the ordinance would be § 1–15–2–j.[4] Section 1–5 of the Barrington Zoning ordinance delineates specific restrictions concerning nonconforming uses. In particular, § 1–5–1 provides that a property owner may continue a nonconforming use existing at the time of the passage of the ordinance or any amendment, provided that such use is not expanded or extended except as the ordinance provides. Moreover, §§ 1–5–6(a) and (b) restrict the right to make additions

---

4. Section 1–15–2–j of the ordinance authorizes the board by special exception to grant the

extension of a nonconforming use of a building.

or enlargements to a building nonconforming in regard to use and yard regulations unless such building, including such addition or enlargement, conforms to the use and yard regulations of the zone in which the property is located. In addition, § 1–5–7 states that a property owner may continue, maintain and repair any nonconforming sign that lawfully existed at the time the ordinance or any amendment became effective. (The board incorrectly stated that signs are not permitted with nonconforming uses.)

■ Thus, § 1–5 of the Barrington zoning ordinance limits what may be done as of right by the owner of land enjoying a nonconforming use. However, it does not limit the board's power to grant, in a proper case, an exception to the requirement of the zoning ordinance. *See Costantino v. Zoning Board of Review,* 74 R.I. 316, 325, 60 A.2d 478, 482–83 (1948) (section of zoning ordinance, which restricted extension of a nonconforming use, had no application to a grant of an exception to the ordinance but limited what might be done as of right by an owner of a nonconforming use). Section 1–15–2 of the Barrington ordinance specifically grants the board the power to grant variances and special exceptions. Indeed, § 1–15–2–j authorizes the board to grant by special exception the extension of a nonconforming use of a building and § 1–15–2–o permits the board to grant a special exception to requirements concerning signs. Therefore, the board incorrectly considered petitioner's application in light of §§ 1–5–6(a) and (b).

■ Furthermore, the board mistakenly treated petitioner's application as one for a variance because it had determined that petitioner was seeking to vary the provisions of the ordinance relating to use. The construction of a canopy within the required thirty-foot setback requirement and the installation of a sign that would exceed the permitted-size limitations have no relationship to the question of the use of the property. It is apparent from the application itself that the board has established the practice of joining in one application a request for an exception or a variance and leaving it up to itself to determine on which ground it may grant or refuse the application. However, there is a difference between an exception and a variance. In *Kraemer v. Zoning Board of Review,* 98 R.I. 328, 331, 201 A.2d 643, 644 (1964), this court stated:

> "Under our enabling act and in ordinances enacted pursuant thereto, the variance and exception are designed to meet two entirely different needs. The variance contemplates a departure from the terms of the ordinance in order to preclude confiscation of property, while the exception contemplates a permitted use when under the terms of the ordinance the prescribed conditions therefor are met."

■ Section 1–5–1 of the Barrington zoning ordinance expressly permits the continuation of a nonconforming use lawfully existing at the time the ordinance became effective or lawfully existing at the time of the passage of any amendment. Additionally, when the prescribed conditions of § 1–15–2–g are met, that section authorizes the board under §§ 1–15–2–j and 1–15–2–o to grant by special exception the extension of a nonconforming use of a building and an exception to the applicable sign requirements.[5] Thus the trial justice erred in up-

---

5. The zoning ordinance provides in § 1–15–2–g that the board has the power to grant special exceptions in a specific situation when: (1) the board determines that "the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially and permanently injured;" and (2) the board determines that the "public notice and hearing" requirements have been met. The board grants the exception subject to appropriate conditions and safeguards.

In order to establish that the special exception sought will substantially serve the public convenience and welfare, an applicant must show that "neither the proposed use nor its location on the site would have a detrimental effect upon the public health, safety, welfare and morals." *See Hester v. Timothy,* 108 R.I. 376, 385–86, 275 A.2d 637, 641–42 (1971); *Nani v. Zoning Board,* 104 R.I. 150, 156, 242 A.2d 403, 406 (1968).

holding the board's utilization of the variance standard and in not remanding the case for reconsideration under the special-exception standard. *See Rich v. Zoning Board of Appeals,* 53 A.D.2d 672, 672, 384 N.Y.S.2d 862, 862–63 (1976) (court held that zoning board, which erroneously considered application for special-use permit as application for variance, applied stricter standard than ordinance warranted and thus remanded case for reconsideration under appropriate standard).

In light of our resolution in this case, we need not address issues raised by the petitioner concerning the application of the *Viti* doctrine and the question of whether § 1–5–6 of the ordinance is consistent with § 45–24–10 of the General Laws.

Accordingly, the petition for certiorari is denied in part and granted in part. The judgment of the Superior Court upholding the board's decision regarding the appropriate standard of review is quashed; the records certified to this court are hereby remanded to the Superior Court with our decision endorsed thereon and with the direction that the board reconsider the application in light of sections 1–15–2–g, 1–15–2–j, and 1–15–2–o.

SHEA, J., did not participate.