DECISION
This is an appeal from a decision of the Zoning Board of Review of the Town of Foster (Board or Zoning Board). The petitioner, the Violet Ajootian Realty Trust (Trust), appeals the Board's denial of its application for a special exception to install an individual sewage disposal system (ISDS) within fifty-five feet of an abutting property line. Jurisdiction of this court is pursuant to R.I.G.L. 1956 § 45-24-69.
Facts and Travel
The subject property in the instant dispute is a 126 acre parcel located on the west side of Walker Road in the Town of Foster. Petitioner's Appendix p. 5. The parcel is split in two by West Meadow Brook, a small stream running in a southerly direction across the property, approximately 700 feet west of the road. Petitioner's Appendix p. 11. The petitioner, through its trustee, Charles Ajootian, now seeks to obtain the necessary permits required for construction of a single-family home on that part of the property lying between the stream and the roadway. Transcript 7/15/95 p. 6. The petitioner hired several experts with the intention of designing a site plan that would maximize the buildable potential of the lot while simultaneously minimizing the impact on the surrounding land and conforming with the greatest number of rules and regulations possible. Transcript 7/15/95 p. 29-30. After considering the alternatives, petitioner submitted a plan which complied with all but two existing rules and regulations. Specifically, under the proposed plan, petitioner was required to obtain a DEM wetlands permit because some grading of the property would occur within 200 feet of West Meadow Brook.[1] More importantly, the applicable municipal ordinance provides that "no portion of a leaching field shall be closer than one hundred (100) feet to the property line, except where the property borders a, public road, in which case the distance to the road line may be reduced to sixty feet (60)." Town of Foster Municipal Zoning Ordinances, Article VI, Section 6. Because the ISDS system as proposed would lie only fifty-five (55) feet from a neighboring property line, it implicates this restriction, thereby necessitating a special use permit.
Petitioner applied for a special use permit pursuant to the ordinance and a public hearing on the application was held before the Zoning Board on July 15, 1995. Transcript 7/15/95 p. 1. At the hearing, petitioner submitted an extensive array of reports and presented two experts. Francis McCabe was qualified as a real estate expert. Transcript 7/15/95 p. 9. He offered testimony on a number of issues concerning the neighborhood and its character as well as the negligible effect the proposed construction would have on other properties in the area. Angelo Riamondi was qualified as an expert in surveying and ISDS design. He offered testimony to the board concerning placement of the ISDS system. He also opined that the house, as proposed, would minimize intrusion into neighboring wetlands and violations of applicable zoning ordinances. Transcript 7/15/95 p. 23. In response, the Board heard from five neighboring property owners who disputed the petitioner's claims and opposed granting the special use permit. Transcript 7/15/95 p. 52.
Upon further discussion, the Board decided to continue the hearing until the following month to allow those board members who so desired to personally examine the property at issue. Transcript 7/15/95 p. 81. Mr. Neal Whitelaw utilized the opportunity to walk the property. Thereupon, he observed a dilapidated two-story house with a dry basement. He also observed a number of locations which he believed could be utilized as alternative locations for the proposed dwelling. Transcript 9/13/95 p. 82-83. After hearing Mr. Whitelaw's observations, a motion was made to approve the petitioner's application. This motion was defeated by a vote of five to zero. Transcript 9/13/95 p. 87-88. A written compilation of the Board's findings was subsequently prepared and filed on November 2, 1995. This decision set forth the following conclusions of law in support of the Board's rejection of the petitioner's application:
 "(1) Based on the drawings of the applicants' land surveyor, the amount of land which would hold a driveway, house, well, and ISDS is under one (1) acre. The Board felt that this is not a sufficient area to give adequate protection to abutting land owners.
 "(2) Because of the surrounding wetlands, the leaching field grading encroaches on the stream setback and wetlands setback.
 "(3) There is another dwelling on the property which would not need a variance and the Board must grant the least relief necessary.
 "(4) The applicant produced no evidence that a house could not be placed elsewhere on the property. The applicant in fact never pursued this option.
 "(5) The proposed ISDS within the wetlands boundaries was not considered a critical area, subsequently the proper precautions were not taken."
Town of Foster Zoning Board of Review Decision p. 3-4. From this decision, the petitioner filed the instant appeal on November 21, 1995.
Standard of Review
Superior Court review of a zoning broad decision is controlled by R.I.G.L. 1956 § 45-24-69 (D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 "(1) In violation of constitutional, statutory or ordinance provisions;
 "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association ofFire Fighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I.Conflicts of Interests Commission, 509 A.2d 453, 458 (R.I. 1986).
The Zoning Board's Decision
In reviewing an application for a special use permit, the Board, pursuant to Article VII, Section 4 of the Town of Foster's Zoning Ordinances, may not grant approval of the petition unless it finds the following:
 "A. That the use will comply with all applicable requirements and development and performance standards set forth in Article VI and Article IX of this Ordinance.
 "B. That the use will be in harmony with the general purpose and intent of this Ordinance and the Comprehensive Plan of the Town of Foster.
 "C. That the granting of the special use permit will substantially serve the public convenience and welfare.
 "D. That the use will not result in or create conditions inimical to the public health, safety, morals, and general welfare.
 "E. That it will not substantially or permanently injure the appropriate use of the surrounding property.
 "F. In addition to the above, the Zoning Board of Review shall consider:
 "1. access to air, light, views, and solar access
 "2. public access to water bodies, rivers, and streams
 "3. the conservation of energy and energy efficiency." Town of Foster Municipal Zoning Ordinances, Article VII, Section 4.
Moreover, under the applicable standard for relief, the Zoning Board of Review shall require that, prior to granting a special use permit, satisfactory evidence in the record exists:
 "(a) that the special use is authorized by this Ordinance
 "(b) that the special use meets all of the criteria set forth in the sections of this Ordinance authorizing such special use; and,
 "(c) that the granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan of the Town." Town of Foster Municipal Zoning Ordinances, Article VII, Section 5 (D).
Furthermore, in accordance with Section 4 (A) of Article VII, all proposals must comply with the standards and requirements set forth in Sections 1-8 of Article VI.
Before analyzing the petitioner's other arguments, this Court first addresses petitioners' claim that the Board applied the wrong standard of review to the application before it. This Court, after carefully reviewing the record, finds itself in agreement. The standard of review for a deviation requires a showing by the petitioner that denial of the application would amount to more than a mere inconvenience. Bamber v. Zoning Boardof Review of Foster, 591 A.2d 1220, 1223 (R.I. 1991). Likewise, a "true variance" requires a showing that the denial will deprive the petitioner of all beneficial use of its property. Bamber,
591 A.2d at 1223. When reviewing an application for a special exception, such as the one at issue herein, the Board need not examine these issues. Rather, the Board must apply the standards set forth in the town ordinances, so as to insure that the application will not have a detrimental impact upon the public's health, safety, welfare, or morals. Bamber, 591 A.2d at 1223-24.
An examination of the record in this case reveals that the Board applied an incorrect standard of review to the present dispute. Specifically, the discussions on the record as well as the Board's conclusions of law indicate that the Board required the petitioner to establish not only that there would be no adverse impact resulting from the special use permit, but also that there was no alternative suitable site for construction of the proposed residence. This more stringent standard of review is more akin to that associated with a "true variance" than a special use permit.
Likewise, the petitioners' own witness, Mr. McCabe, upon questioning from Mr. Shekarchi (attorney for the petitioner), was prompted to offer his conclusion that "the denial of the permit would not only be more than a mere inconvenience, [but] would amount to a confiscation of the [petitioner's] property." Transcript 9/13/95 p. 15. As noted above, such testimony is relevant in the context of an application for either a deviation or a variance. However, it has little relevance to an application for a special use permit.
In the face of such obvious misapplications of the appropriate standard of review, it is this Court's opinion that, in accordance with R.I.G.L. 1956 § 45-24-69 (D), a remand for further proceedings is appropriate. In determining whether or not a remand is an appropriate remedy, this Court must examine whether or not there was a genuine defect in the proceedings, or if there is no record of the proceedings upon which a reviewing court may act. Brough v. Foley, 572 A.2d 61, 63 (R.I. 1990). Citations omitted.)
The procedural deficiency is clear in that the Board applied an incorrect standard of review to, the application before it. Rather than examine the application under the clearly defined guidelines governing the issuance of a special use permit, the Board considered factors more appropriately addressed in the context of an application for either a deviation or a variance. In light of this error, a remand to the Zoning Board is proper.Hugas Corp. v. Veader, 456 A.2d 765, 771 (R.I. 1983) (holding that a remand is appropriate when the Zoning Board has applied an inappropriate legal standard). Moreover, the Board has already received testimony in this matter and is in a much better position than this Court to reevaluate this evidence.
Both the Board and the petitioners should also consider another issue which, in this Court's opinion, could prove conclusive. Specifically, petitioners state in their brief that "[i]t is evident from plaintiff's proposed site plan that all of the requirements and standards set forth in §§ 1-8 of art. VI are satisfied except obviously, the ISDS setback requirement for which the special use permit is sought." While not passing on the issue, it would seem to this Court that such a statement is flawed, as the petitioners' application does not appear to satisfy Section 8 of Article VI.
Section 8, entitled "Number of Residential Structures Per Lot, states that
 "[N]o more than one (1) main residential structure shall be permitted on a lot except as may be permitted under the provisions of Article VI, Section 13 "Senior Citizens Group Housing." Town of Foster Municipal Zoning Ordinances, Article VI, Section 8.
The meaning of such language is clear. Each lot in the town of Foster shall have only one main residential structure built upon it, regardless of lot size. In the present dispute, petitioners are in possession of an extremely large parcel of land. However, the municipal ordinances dictate that as long as the land is considered one lot, only one main residential structure will be permitted thereupon. The evidence now on review before this Court would seem to establish the existence of a preexisting main residential structure thereupon. In reaching this opinion, this Court draws guidance from our own Supreme Court which, in a case arising under a similar ordinance to the one now at issue, construed the term "main residential structure" to encompass an allegedly uninhabitable house. Town of Foster v.Lamphere, 368 A.2d 1238, 1241.
Without reaching the other arguments advanced by the petitioners, it is this Court's decision that the Board applied the wrong legal standard to the petitioners' application. Therefore, this Court remands the petitioners' application to the Zoning Board for reconsideration under the proper standards associated with an application for a special use permit.
Counsel shall submit the appropriate order for entry in accordance with this decision.
[1] This Permit was granted by DEM.