DECISION
Before the Court is an appeal from a May 13, 1998 decision of the Providence Zoning Board ("Board") denying plaintiff George H. Silva's ("plaintiff") request for relief pursuant to Section 303, Use Code 64.1 of the Providence Zoning Ordinance ("Ordinance"). Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The plaintiff is the owner of the subject property located at 25 Greenwood Street, Providence, Rhode Island. This property ("lot") is further described as Lot 485 on Assessor's Plat 63 and is located in a Multi-Family Dwelling ("R-M") zone. The plaintiff is also the owner of a three-family home, located at 24 Greenwood Street, which is rented by nine students. This three-family home is across the street from the property which is the subject of this law suit.
The plaintiff purchased the lot in controversy from the Providence Plan Housing Corporation in 1997 for one dollar. This lot once occupied an abandoned building which had burned in 1994. In accordance with the August 12, 1997 purchase and sale agreement, the City of Providence was to arrange for the demolition of the abandoned house on the lot, while plaintiff was responsible for the demolition costs. The agreement contained an express limitation which stated that the "lot [was] to be used only for parking after purchase . . ."
On or about September 23, 1997, the lot was transferred to plaintiff by general warranty deed. Like the purchase and sale agreement, the warranty deed contained an express limitation. That limitation provided:
 "The above premises are being conveyed subject to the covenant and restriction that no additional construction or building shall take place upon said parcel, except as an addition to or as an accessory building for a residential building located on an adjacent parcel."
On or about August 25, 1997, plaintiff was advised that the demolition costs for removal of the building would be $9,200. This price did not include the cost of any asbestos removal, if necessary. Thereafter. on or about February 23, 1998, plaintiff paid for the demolition costs by way of a $9,325.30 cashier's check made payable to the "Providence City Collector."
On or about December 5, 1997, plaintiff filed an application with the Board requesting relief under Section 303, Use Code 64.1 of the Ordinance. The plaintiff proposed to develop a residential parking lot, on the 25 Greenwood property, for seven vehicles. According to the plaintiff, this parking lot was necessary to support his parking needs and the parking needs of his tenants living at 24 Greenwood Street.
On or about April 7, 1998, a hearing was held before the Board. The plaintiff testified, informing the Board of the parking problems in his neighborhood. (Tr. at 2.) The plaintiff explained that he had received complaints that his tenants were parking on the street. Id. In order to "try to eliminate all [of his] tenants from parking all over Greenwood Street," plaintiff stated that he desired to use the lot for parking. (Tr. at 3.) The plaintiff proposed to clean up the lot by refacing the wall in the front of the lot and grooming it with shrubs, flowers and trees. (Tr. at 3-4.) The plaintiff further indicated that he would place a slatted fence around the lot so that headlights, from cars entering the lot, would not shine into nearby properties. (Tr. at 3.) The plaintiff desired a northeast entry to the lot so that entering cars would be away from neighboring houses. (Tr. at 3.)
Also, during the April 7, 1998 hearing, the Board heard testimony from Thomas Sant, an abutting property owner residing at 31 Greenwood Street. (Tr. at 7.) Mr. Sant objected to the granting of plaintiff's application stating, inter alia that he did not understand "how a parking lot [would] rejuvenate or revitalize the area." (Tr. at 8.) Furthermore, in a letter of objection submitted by the city tax assessor, the tax assessor opposed the granting of plaintiffs application expressing concerns on property values and trends. See Letter of Thomas P. Rossi dated March 9, 1998. Finally, the Board had before it the Department of Planning's recommendation and a letter from the Department of Traffic Engineering. On or about May 13, 1998, the Board issued a decision denying plaintiffs application. The instant appeal timely followed.
The plaintiff argues that the Board committed error of law in applying the use variance standard, instead of that for a special use permit. Further, plaintiff contends that the Board erred in failing to grant him the relief he requested. Additionally, plaintiff asserts that the Board incorrectly failed to consider the effect of the restrictive covenant on his deed. Finally, plaintiff argues that the Board erred by misconstruing the tax assessor's letter, according that letter the force of an expert opinion, and by relying on the letter in order to deny his application.
 Standard of Review
This Court possesses appellate review jurisdiction of a zoning board of review decision. Pursuant to G.L. § 45-24-69
(D):
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court, when reviewing the decision of a zoning board of review, must examine the entire certified record to determine whether substantial evidence exists to support the finding of the zoning board of review. Salve Regina College v. Zoning Bd. ofReview, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. ZoningBd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v. Lynch, 707 A.2d 663 (Rd. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record.Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v.Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 I. The Zoning Board Decision A. Providence Zoning Ordinance
The plaintiff argues that the Board committed an error of law in applying the more stringent use variance standard, instead of the "less rigorous" standard used for granting a special use permit. The defendant acknowledges the applicable standard for special use permit but argues that the record is completely devoid of evidence for which plaintiffs request for relief could have been granted.
The standard for granting a special use permit is further discussed in Section 902.4 of the Ordinance. That section, entitled "Special use permits," provides:
 902.4. Special use permits. To authorize, upon application, in specific cases, special use permits, pursuant to section 303 and other applicable provisions of this ordinance. The Board may impose such conditions regarding the proposed, building, structure, use or otherwise, as it deems appropriate. To authorize a special use permit, the board must first:
 (A) Consider the written opinion from the department of planning and development.
 (B) Make and set down in writing specific findings of fact with evidence supporting them, that demonstrate that:
 1. The proposed special use permit is set forth specifically in this ordinance, and complies with any conditions set forth therein for the authorization of such special use permit;
 2. Granting a proposed special use permit will not substantially injure the use and enjoyment of nor specifically devaluate neighboring property; and
 3. Granting the proposed special use permit will not be detrimental or injurious to the general health, or welfare of the community.
Section 303 of the Ordinance governs "Use Regulations." Use Code 64.1 permits a parking lot, in a R-M zone by way of a special use permit, subject to the requirements of Section 419.6.[1] Section 419.6 of the ordinance discusses parking in R-3, R-G, R-M, and R-P zones. That Section, 419.6 expressly permits the establishment of off-street automobile parking lots "to support off-street parking requirements of residential uses in areas where the board finds that there is a need for such additional facilities or where required off-street parking cannot be satisfied on the lot in which such residential uses are located." A parking lot established, under Section 419.6, must be developed and maintained in accordance with Section 705[2] of the ordinance; the parking lot is subject to further conditions imposed by the Board.
 B. Special Use Permit vs. Use Variance
Unlike a use variance, which is defined as "permission to depart from the use requirements of a zoning ordinance . . .," a special use is a "regulated use which is permitted pursuant to the special-use permit[3] issued by the authorized governmental entity. . . ." See G.L. § 45-24-31 (61)(a) (57). Special use permits and variances are designed to meet different needs. As discussed in Hugas Corp. V. Veader, 456 A.2d 765 (R.I. 1983),
 "`[u]nder our enabling act and in ordinances enacted pursuant thereto. the variance and exception are designed to meet two entirely different needs. The variance contemplates a departure from the terms of the ordinance in order to preclude confiscation of property, while the exception contemplates a permitted use when under the terms of the ordinance the prescribed conditions therefore are met.'" Id. at 770 (quoting Kraemer v. Zoning Board of Review, 98 R.I. 328, 331, 201 A.2d 643, 644 (1964)).
The standard for granting a use variance is indeed more rigorous than that used for granting a special use permit. To obtain a use variance, an applicant must demonstrate that being restricted to the permitted uses within the zoning ordinance will deprive him or her of all beneficial use of the property in question. Almeida v. Zoning Bd. of Review of the Town ofTiverton, 606 A.2d 1318, 1320 (R.I. 1992).
An applicant seeking a special use permit must satisfy the rules and standards established by the town's ordinance permitting such relief. Sea View Cliffs, Inc. v. Zoning Bd. ofReview, 112 R.I. 314, 309 A.2d 20 (1973).[4] When a zoning board's initial analysis is based upon an incorrect legal standard, a remand is proper. See Hugas, 456 A.2d at 771 (trial court erred in upholding the zoning board's decision which incorrectly applied the standard for variance, when the special exception standard applied, and in failing to remand the case for reconsideration under the special exception standard).
In its decision, denying plaintiff's application, the Board made the following findings of fact:
 "Now, therefore, upon consideration of the application, testimony and review of the architectural plans and after having carefully weighed the same and utilized its own expert knowledge which confirms and is corroborated by the testimony presented at the hearing, the Zoning Board of Review makes the following findings of fact:
 1. The Board finds that the Applicant has not lost all beneficial use of his property because the Zoning Ordinance allows the construction of a dwelling on the Parcel.
 2. The Applicant has not met the standards set forth for the granting of a use variance."
In its decision, the Board applied an incorrect legal standard, that of the use variance, in denying plaintiffs application for a special exception. As this error of law substantially prejudiced the rights of the plaintiff, this Court remands this case to the Board for reconsideration under the standards for granting a special use permit. The plaintiffs additional arguments need not therefore be considered at this time.
After a review of the entire record, this Court finds that the Board's decision is affected by error of law. Substantial rights of the plaintiff have been prejudiced. Accordingly, this Court orders that the decision be remanded to the Board for reconsideration under the ordinance standards for granting a special use permit. This Court will retain jurisdiction of this matter.
Counsel shall submit the appropriate order for entry in accordance with this decision.
[1] Section 419 of the Providence Zoning Ordinance is entitled "Special use permit; zoning board."
[2] Section 705, entitled "Parking Standards; more than four vehicles," discusses how parking lots are to be developed. This section contains inter alia provisions on lighting, landscaping, and screening.
[3] A special use was previously referred to as a special exception. See G.L. § 45-24-31 (57).
[4] The Zoning Enabling Act of 1991 requires only that the criteria for issuing special use permits "be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the city or town." See G.L. 45-24-42 (3).