DECISION
Before this Court is an appeal from a unanimous Decision of the Zoning Board of Review of the Town of Johnston (the "Board"). In its Decision, the Board denied John Ruggieri and Valentino Cairo ("Appellants") dimensional relief from the Zoning Code of the Town of Johnston under Art. Ill, Section F, Table III-F-l. Appellants seek a reversal of the Board's Decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
The lot in question is located on Golden View Drive in Johnston, Rhode Island, and is known as Tax Assessor's Plat 45, Lot 232. The property is located in an R-40 Residential District, which requires 40,000 square feet minimum lot size for single-family dwellings. (Zoning Ordinance of the Town of Johnston, § 340.) The subject lot, consisting of *Page 2 
approximately 20,000 square feet, is non-conforming. (Application for Variance Addendum of Facts.) Appellant Ruggieri has owned the vacant lot for six years. Id
On October 28, 2005, Appellants sought a dimensional variance to construct a 45' by 31' 4", single-family dwelling. (Application for Variance.) Specifically, the Appellants sought relief from the various side yard setback requirements. The Zoning Code requires a left side yard setback of 35 feet in which a proposed setback of 28 feet was requested. Additionally, the Zoning Code also requires a right side setback of 35 feet, for which 27 feet was proposed. Id As such, Appellants requested relief of 7 feet on the left side, and relief of 8 feet on the right side. Id
On January 26, 2006 and February 23, 2006, advertised hearings were held on the matter. Id at 3. The Board continued the matter for several months due to concerns regarding rainwater drainage and water runoff on Golden View Drive, along with the stated intention of the Town to complete a study of the water problem in the area. Id Said study was never completed. Id
On September 28, 2006, another hearing was held on the matter. At this hearing, Appellants presented a hydrology and drainage report from Jeffrey J. Campopiano, P.E., a registered professional engineer, which indicated installation of a drywell would accommodate additional water flow and runoff created by the construction of the house. Id Appellants also submitted a letter from Laura Abel, P.E., Town Engineer, who reviewed the hydrology and drainage report and reported that proper installation of the proposed drainage system should not exacerbate the water problem. Id At the conclusion of this meeting, the Board voted 5-0 to deny the application. *Page 3 
Appellants submitted a Motion to Reconsider on October 25, 2007. The Board granted this motion, and held another hearing on March 27, 2008. (Hr'g Tr. at 3.) At this hearing, Appellants submitted Exhibit 1, the Assessor's Map, to show that the majority of lots in the area were 20,000 square feet lots, and that their request would be in conformance with the surrounding area. (Hr'g Tr. at 5.) Appellant's counsel then testified that he had personally traveled to Golden View Drive after a rainstorm and believed some of the water buildup was due to a berm that had been constructed in front of another resident's home. Id Appellants also resubmitted the hydrology report by Jeffrey Campopiano and the letter by the Town Engineer, Laura Abel. Id Anthony Caprio (Mr. Caprio), who is a real estate broker and licensed appraiser, testified as an expert witness for the Appellants. Id Mr. Caprio testified that the proposed home would be in harmony with the neighborhood, and was compatible with the Comprehensive Plan of the Town of Johnston. (Hr'g Tr. at 17.) Appellants then submitted Exhibit H, which indicated a 1374 square foot home was built on a lot consisting of 13,100 square feet at 14 Golden View Drive, after receiving a dimensional variance by the Board in April of 2004. (Hr'g Tr. at 20.)
During Mr. Caprio's testimony, Board member Pilozzi interjected: "I'm not comfortable with another dwelling there for the simple reason, I think it would exacerbate that problem that's up there now." (Hr'g Tr. at 25.) When Mr. Caprio suggested the use of a residential drain, Mr. Pilozzi questioned who would end up maintaining the drain and felt public works would ultimately end up being called. Id Mr. Caprio then referenced seven or eight multi-listing statements of similar homes on undersized lots on Golden View Drive. (Hr'g Tr. at 27.) At this point in the hearing, Mr. Pilozzi stated the following: *Page 4 
 We have no trouble, I have no trouble, personally with the variances, the dimensional variances being asked. You're asking 8 feet and 7 feet; that's never been the problem from a year ago when they first appeared with this application. The problem has always been with the water. I'm comfortable with the variances being requested; I'm just not comfortable with the water problem up there. (Hr'g Tr. at 28)
Mr. Caprio opined that there would be no issue with the public safety or welfare, and that public convenience will be maintained and not affected. (Hr'g Tr. at 30.) He furthered testified that the hardship the Appellants were seeking relief from was due to the fact the lot was a substandard lot of record. (Hr'g Tr. at 31.) Mr. Caprio also stated that the hardship was not due to the economic disability of the Appellants and that a denial of the variance would amount to more than a mere inconvenience, as their requested relief (construction of a single-family home) was the smallest relief possible. (Hr'g Tr. at 32.)
In opposition to the application, Bernard Nascenzi, the Johnston Town Building Official, testified that the drainage system recommended in the hydrology report does not work in the neighborhood in question, but an underground storage system would. (Hr'g Tr. at 35.) He further testified that the purpose of the berm that had been constructed was to redirect the water onto Golden View Drive and that it never should have been installed. (Hr'g Tr. at 38.) He further stated, "I haven't tested the lot, I haven't seen any tests on the lot. I'm just giving you this information based on previous experiences in the neighborhood, on other lots. . . ." (Hr'g Tr. at 39.)
Also opposed to the application, Stephanie Manzi, Council person for District 5, testified that she regularly gets calls for water problems in that area. (Hr'g Tr. at 41.) She furthered testified that the condition got worse with every home that was built in that vicinity and that the *Page 5 
Town has been unable to fix the problem because of the cost. (Hr'g Tr. at 42.) She also stated that there was no issue with the dimensional request; that it was "just simply the water issue." Id
Board member Jeffrey then moved to deny the application. (Hr'g Tr. at 44.) He stated he thought the house would be in conformity with the area but was not convinced the house would not impact the water problem. Id He based his opinion on the statements of Mr. Nascenzi and Miss Manzi and the frequency of complaints. Id Jeffrey specifically made a motion that the Board reject this application based on the health, safety, and welfare of the area. (Hr'g Tr. at 45.)
Mr. Nascenzi was also asked if an underground storage system would solve the problem. (Hr'g Tr. at 46.) He stated that the underground storage type of system probably would alleviate or could prove that this particular lot would not have any impact on the water. Id Board member Anzelone then stated, "if that's the only solution, that would be the only solution that the Board would probably, you know, consider it." (Hr'g Tr. at 47.)
Board member Pilozzi concluded that he had "no trouble with this application. I have no trouble at all with the variances. I have no problem at all with the house design. It's in conformance with everything. The problem is, my findings of fact would have to be that it's against the health, safety, and welfare of the residents because of the water problem, and that's what I'm going to base my motion, my second to my colleague's motion to deny, based strictly on the water problem. . . ." (Hr'g Tr. at 48.)
At the conclusion of the hearing, the Board unanimously denied the proposed dimensional variance by a vote of 5-0. (Hr'g Tr. at 49.) On April 3, 2008, the Board issued a two-page decision, formally denying the Appellant's application. (Decision at 2.) The Board's *Page 6 
written Decision was recorded on May 1, 2008. Appellant thereafter filed a timely appeal to this Court.
 Standard of Review
This Court's review of a zoning board's decision is governed by § 45-24-69(d), which provides:
 The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon lawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing the decision of a zoning board, a Superior Court Justice may not "substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously find[s] that the board's decision was supported by substantial evidence." Apostolou v. Genovesi.120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of NorthKingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v.George *Page 7 Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Insufficient or conclusional evidence warrants the reversal of a decision of a zoning board. Hopf v. Bd. of Review of City ofNewport, 120 R.I. 275, 288-89, 230 A.2d 420, 428-29 (1967). Finally, when a zoning board record does not contain sufficient information to allow review, "the case should be remanded to the board with directions to make findings of fact and conclusions of law based on the required evidence." Ridgewood Homeowners Ass'n v. Mignacca, 813 A.2d 965, 977
(R.I. 2003) (citing Cranston Print Works Co. v. City of Cranston,684 A.2d 689, 691-92 (R.I. 1996)).
 Dimensional Variance
A zoning board is required to apply the legal standard set forth in § 45-24-41(c) of the State Zoning Enabling Act and § 340-74(B) of the Code of the Town of Johnston when deciding to issue a dimensional variance:
 In granting a variance, the zoning board of review shall require that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary. *Page 8 
Additionally, § 45-24-41(d)(2) requires zoning boards of review to enter evidence into the record of the proceeding "establishing that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." With respect to zoning board decisions, our Supreme Court in Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001), specifically cautioned such boards to "make certain that zoning board decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets of fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)."
 The Zoning Board Applied the Wrong Standard of Review
The Appellants argued that the Board applied the wrong standard, the "use" standard, instead of the "dimensional" standard. The Board argues that the wording in the decision was a typographical error and that a review of the record in its entirety clearly demonstrates that the Board did not focus on the proposed use of the subject property or apply the more restrictive "use" variance standard.
What the record actually demonstrates is that the Board in its decision used the standard for a "special use," rather than a "dimensional variance." On April 3, 2008, the Board denied the Appellants' application. In its findings, the Board concluded with "the granting of this variance will result in or create a condition that will be inimical to the public health, safety, morals and general welfare of the community." (Decision at 2.) It is well-settled that in granting a special use permit, a zoning board must find that the use "will not be inimical to the health, safety, or welfare of the community." SalveRegina College v. Zoning Bd. of Review of City of Newport, 594 A.2d 878,880 (R.I. 1991). Alternatively, in granting a request for a dimensional variance, a zoning board must find that the applicant will suffer more than a mere inconvenience if he or she *Page 9 
is denied the variance. See Sciacca, 769 A.2d 578, 585 (R.I. 2001) (which clarified the standard for obtaining a dimensional variance and established that a landowner need only to show an adverse impact that amounts to more than a mere inconvenience).
When a zoning board utilizes the wrong legal standard in deciding an application, this Court can remand. In Hugas Corp. v. Veader,456 A.2d 765, 771 (R.I. 1983), a zoning board improperly reviewed a petitioner's application pursuant to the variance standard instead of the special exception requirements. On appeal, our Supreme Court remanded the matter to the zoning board for application of the correct standard. Again, invon Bernuth v. Zoning Bd. of Review of Town of New Shoreham.770 A.2d 396, 399 (R.I. 2001), this time involving a dimensional variance, our Supreme Court remanded a matter to the zoning board when the board failed to provide substantive findings demonstrating compliance with all the requirements for zoning relief including the required degree of hardship; see also Hopf 102 R.I. at 289, 230 A.2d at 428 (remanding the zoning matter to the zoning board because a reviewing court will not guess or speculate as to what grounds the zoning board relied upon if such reasons and evidence supporting those reasons are not specifically stated in the zoning board's decision).
In the instant case, the Board used a special use standard with respect to a dimensional variance application and failed to apply all four subsections required under the dimensional variance standard. Furthermore, by utilizing the incorrect standard, the Johnston Zoning Board did not simply make a typographical error. The Court finds here that in applying the incorrect standard, the Board acted in violation of ordinance provisions and made a decision affected by error of law, such that substantial rights of the applicants have been prejudiced. Accordingly, this Court remands this matter to the Board for application of dimensional use standards. *Page 10 
 Conclusion
In denying the Appellants' application for dimensional relief, the Board utilized an incorrect standard and failed to make sufficient findings of fact. For the foregoing reasons, this case is remanded to the Board for findings and conclusions of law based on the correct standard. Jurisdiction shall be retained by this Court.