DECISION
Before this Court is an appeal of a decision of the Town of Barrington Zoning Board of Review ("Board of Review" or "Board") brought by John Buffum and Angie Salem ("the Buffums" or "Appellants"). Jurisdiction in this Court is pursuant to R.I.G.L. 1956 § 45-24-69. For the reasons discussed herein, this Court affirms the decision of the Board of Review.
 I. Facts and Travel
In August 2009, the Buffums purchased property at 450 Nayatt Road in Barrington, Rhode Island ("the Property"). The Property is improved with a single family house built in 1996 as well as an accessory structure which, before the current dwelling house was built, was a single family house and the primary residence on the Property. The accessory structure has three bedrooms, a bathroom, and a living area. The accessory structure, however, has no kitchen facilities. The Buffums sought a zoning variance to permit the use of the accessory structure as a guesthouse. *Page 2 
The Property is situated in an R-25 zone, a zone that permits by guesthouses by right on lots of 40,000 square feet or more. Because the Property consists of only 27,000 square feet, a dimensional variance is necessary to the Buffums using the accessory structure as a guesthouse.
In 1996, Ronald Eaton — then owner of the property — built the current residence and sought a dimensional variance to allow him to keep the accessory structure as a guesthouse. While this application was pending, Eaton sold the Property to Cynthia Martin.
Martin amended the request for the dimensional variance, affirmatively agreeing to remove the kitchen from the guesthouse and stating that she wished to use the building for only personal use, such as a cabana or home office. The Zoning Board decided that Martin could keep the original house as an accessory structure with two conditions: "1) no overnight guests; 2) no outside business use." See Recorded Decision of the Zoning Board of Review, filed September 30, 1996 ("the 1996 Decision").
The Buffums seek the use of the accessory building as a guest house because they have a large immediate family and would like to have a comfortable place for out-of-town relatives to stay when they visit.[1] To that end, the Appellants applied for a dimensional variance under the Barrington Zoning Ordinance on November 19, 2009.
The Buffums presented their application to the Board of Review on December 17, 2009. At the hearing, the Board heard testimony from John Buffum as well as his neighbors. The neighbor who gave the longest, most-detailed testimony in opposition to the dimensional variance was Mary Beth Frye, owner of an abutting property at 91 Rumstick Road. Ms Frye's testimony included an account of the misuses of the accessory structure by previous owners as well as concerns about the effect of a dimensional variance on the neighborhood. She expressed *Page 3 
a fear of setting a bad precedent and particular concern with property values, "increased noise . . . waste, traffic, [and] everything that surrounds having people in another dwelling." (R. 36). Another neighbor, Loyd Edwards [sic], expressed his concern about setting a precedent for long-term guests staying in the accessory structure and the residence becoming "a full-time residence, legally or illegally." (R. 53-54). Neighbor Margaret Homquist Mello testified in support of the variance and stated that the original owner of the property was very family-oriented and would not have wanted the Buffums' family to be uncomfortable.
At the close of testimony, the board members met in private to reach their decision. On December 22, 2009 the Board of Review issued a decision in which the application was denied by a vote of three members in favor of granting the application and two against.[2] That decision gave three reasons for denying the decision:
 • "1996 ruling of the Zoning Board allowing the accessory structure to remain had made it a condition that there be no overnight guests. These two members believed that this condition remained fully in effect on the property and the structure, and should continue to be respected; they saw no basis on which to lift or remove the condition under the circumstances.
 • The requirements of least relief necessary and mere inconvenience have not been met
 • The strong opposition of the closest neighbors raises questions as to whether the applicant has satisfied the requirement] . . . `that the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the chapter or the comprehensive plan'"
On January 8, 2010, the Buffums filed the instant appeal in this Court. *Page 4 
 II. Standard of Review
The Superior Court's review of a Zoning Board's decision is governed by R.I.G.L. § 45-24-69(d) which states:
 "[t]he court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The court "must examine the entire record to determine whether `substantial' evidence exists to support the Board's findings."Hugas Corp. v. Veader, 456 A.2d 765, 769 (R.I. 1983)quoting, Toohey v. Kilday,415 A.2d 732, 735 (R.I. 1980); DeStefano v. Zoning Board ofReview, 122 R.I. 241, 245, 405 A.2s 1167, 1170 (R.I. 1970). This Court defines substantial evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Board of Review of NorthKingstown, 818 A.2d 685, 690 (RI 2003) quoting,Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981). *Page 5 
 III. Analysis
When deciding to grant a dimensional variance, zoning boards require:
 "that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 . . . .
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: (1) in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. Nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance; and (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. The zoning board of review has the power to grant dimensional variances where the use is permitted by special use permit if provided for in the special use permit sections of the zoning ordinance." R.I.G.L. § 45-24-41
The parties differ on several major points: (1) whether the 1996 Decision of the Board of Review has bearing on this case, (2) whether the board members that voted to deny the variance improperly considered lay testimony, and (3) whether the hardship the Buffums will suffer without the variance amount to more than a "mere inconvenience." *Page 6 
 A. Effect of the 1996 Decision of the Board of Appeals
Appellants argue that the Board of Appeals erred by considering the 1996 Decision in its consideration of the present application for variance. If the Board of Appeals "hears an application for relief and denies it, the doctrine of administrative finality bars a subsequent application for the same relief absent a showing of a change in material circumstances in the time intervening between the two applications." Audette v. Coletti539 A.2d 520, 521-522 (R.I. 1988). Appellants argue that: 1) the two applications sought different relief, and 2) that there had been a change in material circumstances between the two applications. This Court agrees with the Buffums that the two applications sought different relief. Because the question of whether to use the administrative finality doctrine can be disposed of considering only the different relief sought, this Court will not consider whether a material change in circumstances had occurred between the two applications.
Whereas, the applicant in 1996 sought a variance to keep the building on the property, the Buffums seek their variance in order to use the building for a purpose currently not allowed. This court recognizes that this is a subtle difference, but it is a difference nonetheless. Indeed, the town solicitor suggested at the hearing that the two applications were not for the same relief. (Transcript 45). The previous applicant could not possibly have been seeking the same relief because she unilaterally volunteered to use the accessory structure for purposes other than the lodging of overnight guests.
Thus, any reliance on the 1996 Decision and the doctrine of administrative finality is misplaced and should not have been the basis for the denial of the application. This Court, however, is not convinced that the 1996 Decision and the administrative finality doctrine were the driving force in the Board's decision to deny relief. Specifically, nay-voting committee *Page 7 
member Mark Freel stated that he "just [could not] get past the mere inconvenience standard, in light of the preexisting condition." (R. 90). Chairman Kraig, the other nay-voting committee member stated that he would "vote against, and adopt essentially the rationale that Mark [Freel] set forth." (Id. 92). The Board, therefore, did not rely primarily on the doctrine of administrative finality, and its mistaken use of that doctrine does not require a reversal of its decision.
 B. Consideration of Lay Testimony
Appellants also complain that the Board improperly relied upon the lay testimony of neighbors in making its decision to deny the application. Specifically, after saying that he would "adopt essentially" the position that the Appellants had not met the mere inconvenience standard, Chairman Craig stated "I'll also add that I do attach substantial weight to the opposition of the neighbors. I think that is . . . evidence of the alternation of the surrounding area as well as impairing of the intent and purpose of the chapter." (Id.)
Appellants argue that "the two zoning board members who voted to deny did so because they considered only the effect of the use on the surrounding property owners." (Reply Mem. Of Law in Support of Appeal). Appellants further argue that the neighbors "did not offer any competent testimony to support [their] concerns, as property values, and traffic/noise, are areas for which only expert testimony is competent evidence, and they were not experts." (Id. citing to Salve Regina College v. Zoning Boardof Review of the City of Newport 594 A.2d 878, 882 (R.I. 1991) ("The lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force.") While the Buffums are correct that lay judgments of neighbors with regard to traffic and property values are not an appropriate basis on which to deny a dimensional variance, the nay-voting board members in this case had sufficient reason to deny the application based on the mere *Page 8 
inconvenience standard and superfluously added comments regarding the lay testimony of neighbors. Thus, while it was incorrect for the Board to consider the lay testimony of neighboring property owners with regard to concerns about traffic and property values, the record shows that the Board did not make the concerns of the neighbors the deciding element of its decision to deny a dimensional variance to the Appellants.
 C. Mere Inconvenience
Finally, the two parties disagree as to whether the Buffums have met the "mere inconvenience" test. That is — does the denial of the application for a dimensional variance amount to more than a mere inconvenience? The Rhode Island Supreme Court has held:
 "that a recent amendment to § 45-24-41(d)(2) requires the applicant to demonstrate only `that the hardship [the applicant would suffer] if the dimensional variance is not granted amounts to more than a mere inconvenience.' The new language in the 2002 amendment reinstates the judicially created Viti Doctrine, Viti v. Zoning Board of Review of Providence, 92 R.I. 59, 64-65, 166 A.2d 211, 213 (1960), which held that for an applicant to obtain a dimensional variance (also known as a deviation), the landowner needed to show only an adverse impact that amounted to more than a mere inconvenience" Lischio v. Zoning Bd. of Review of Town of North Kingstown 818 A.2d 685, 691 (R.I. 2003).
The Board denied the application for a dimensional variance because two board members did not think that denying the Buffums would amount to more than an inconvenience for the Buffums. The board had sufficient substantial evidence with which to come to the conclusion that denying the Buffums an opportunity to host out of town guests in the accessory structure did not amount to anything more than a mere inconvenience. Mr. Buffum described the hardship the family would face without a variance to be that his "children [would have] to have to double up, sleep on the floor; [the family would] have to get our air mattresses and everything else [, and] I *Page 9 
will probably give up my bedroom for" the guests. (R. 52). While heartfelt, Ms. Mello's testimony about the original owner's fondness for family and likely desire for an extended family to be able to visit in comfort was not probative to the inquiry the Board made. Furthermore, the Buffums have presented no case law in which the inability to host out of town guests was deemed to have passed the mere inconvenience test.
Cases in which the "mere inconvenience" standard have been met include: Cosel v. Silveira, 2011 WL 1748542 (May 3 2011) (home without master bedroom was outdated and denial was deemed to have been more than a mere inconvenience) and Felicio v. Fleury, 587 A.2d 480 (without a dimensional variance, the land in question could not have been used as a dwelling at all). The inability to host out of town guests in an accessory structure does not seem to reach the level of inconvenience from cases in which the mere inconvenience standard was met.
Directly on point is DiDonato v. Zoning Bd. of Review of Townof Johnston, 104 RI 158, 242 A.2d 416 (1968). InDiDonato, the plaintiff had a large family and wished for a variance so he could build a larger home that would run afoul of a city ordinance regulating dimensions of homes on lots. The Rhode Island Supreme Court held that "petitioner ha[d] shown merely that he would suffer a personal inconvenience in having to house his family in a dwelling which must conform to the lot-line restrictions imposed by the ordinance." Here, the Buffums also seek a variance to ease the difficulties of having a large family. As in the DiDonato case, such difficulties do not amount to more than a mere inconvenience. See also, Kirby v. Corey,2001 WL 1558780, 5 (R.I. Super., 2001) (holding that "applicant's desire to shelter her mother from the children's noise and late hours [by building a non-conforming addition to her home], amounts only to a desire to avoid a mere inconvenience." *Page 10 
Thus, there exists substantial evidence to support the Board's conclusion that the Buffum's desire to host out-of-town guests in an area separate from the rest of the family failed to pass the "mere inconvenience" test.[3]
 IV. Conclusion
This Court upholds the Decision the Board of Review. Although the nay-voting Board members made gratuitous references to the 1996 Decision as well as the concerns of the testifying neighbors, this Court — upon review of the record — believes that the driving force of the Board's decision to deny was the Appellant's failure to meet the "mere inconvenience standard. This failure to prove that denial of the application would be more than a mere inconvenience was a sufficient reason to deny the application and the mistaken references to other criteria were not necessary. Given the comments of the two Board members voting against the application, as well as the evidence in the record, the Court finds that there is more than a scintilla of evidence in support of the Board's decision to deny the application.
This Court has reviewed the entire record before it. Having done so, this Court is satisfied that the Decision of the Zoning Board is supported by the reliable, probative, and substantial evidence, is not an abuse of discretion, clearly erroneous, or affected by error of law. Substantial rights of the Appellants have not been prejudiced. Counsel shall submit the appropriate judgment for entry.
[1] The current restriction appears to be limited to overnight guests. There does not appear to be any restriction against occupants of the Property's main dwelling structure from spending nights in the accessory structure from time to time.
[2] The application needed the support of four members in order to be granted.
[3] City Solicitor Nancy Letendre twice advanced the position at the hearing that the ban on overnight guests in the accessory structure would not preclude residents of the primary dwelling house from staying in the accessory structure from time to time. (R. 27, 69-71). See Footnote 1.

 *Page 1