DOMENIC SPIRITO *et ux. vs.* ZONING BOARD OF REVIEW OF CRANSTON.

APRIL 23, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is a petition for a writ of *certiorari* under § 8, chapter 342, general laws 1938. It seeks to review and reverse the decision of the zoning board of review for the city of Cranston, denying the petitioners' application for an exception under the zoning ordinance of that city.

The respondent board has certified to us, pursuant to the writ, the record of its proceedings relating to such applica--tion.

It appears from the record that the petitioners, husband and wife, are the owners of a lot on the westerly side of Cranston street in the city of Cranston. This lot is located, according to the zoning ordinance of that city, in a "business district" and is improved by five buildings. These include a three-story building containing two stores with tenements above; a two-family house; a one-family house and two barns.

On March 18, 1939 the petitioners filed an application under section 24 B (2) of the city's zoning ordinance for an exception thereto, which would permit their two sons, doing business under the trade name of Hope Cement Block Company, to use these premises for the manufacture of cement blocks by means of a tamping or "tamper" machine. A hearing on this application was duly advertised, and was held by the respondent board on April 11, 1939. At that hearing the only witnesses appearing in support of the application were Domenic Spirito, one of the petitioners, and his counsel. Certain remonstrants also appeared in person, by counsel, or by letter, to object to the granting of this exception.

Evidence was introduced to show that lots on the easterly side of Cranston street, in general opposite the petitioners' lot, were in an industrial zone, but that at least one of them was then used for residential purposes as it had been used prior to the enactment of the zoning law; that on the westerly side of Cranston street, south of the petitioners' lot, the land was zoned for business purposes, but that a large portion of this land, including the lots of two of the remonstrants, also was used for residential purposes before and after the enactment of the zoning law; that on the north and west sides of petitioners' lot the adjoining property was

placed in an industrial zone, but that its use by the city was for purposes of its police department, garage and yard, and that another house in this area on the west was used for residential purposes by another remonstrant.

There was no evidence of any industrial zone to the south of petitioners' property on the west side of Cranston street, or of any industrial or manufacturing use in the vicinity which emitted any noise, vibration, dust or odor comparable to that which accompanied the use of a tamping machine as applied for under this application. There was further evidence that the petitioners' lot contained no sand or gravel bank; and also that, after a hearing upon a bill of complaint brought by one of the remonstrants against the petitioners, the superior court had entered a decree enjoining the use of a tamping machine in the barn on those premises. At the close of the hearing the respondent board voted to lay the application on the table for further investigation and study.

On June 13, 1939, the petitioners requested permission to reopen the hearing, in order to present additional evidence in support of their application. This request was granted by the board over the objection of the remonstrants and accordingly, on July 11, 1939, a further hearing was held. The applicants then introduced additional testimony largely in the nature of expert testimony relating to the applicants' offer to insulate the proposed renovated barn and building against the dust, noise and vibration from the use of the tamping machine. The applicants were given every opportunity to present all the evidence which they desired and closed their case. Apparently those members of the board who were not familiar with the premises made an inspection of them before the board unanimously voted to deny the application. Thereupon the petitioners sought the instant writ to review that decision on the ground that the board had abused its discretion under the law.

The application, as filed, was for an exception under section 24 B (2) of the zoning ordinance which reads:

"Special exceptions.—When in its judgment the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured, the board of review may in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, authorize special exceptions to the regulations herein established as follows:

"(2) The location of any use specified in paragraphs (1), (2) and (9) of subdivision A of section 7 in any part of a business district."

The provisions of paragraphs (1) and (2) of subdivision A of section 7 are not important here. Paragraph (9) of said subdivision reads as follows:

"Manufacture or industrial operation of any kind not heretofore listed and exclusive of the industrial operations listed in section 8 and in section 9. *Provided that no industrial process shall be included which emits dust, odor, gas, fumes, noise or vibration* comparable in character or in aggregate amount to that of any use included in section 8 as a special industrial use, or in section 9 as a prohibited use." (italics ours)

The petitioners, however, sought also to argue for the application under section 24 C, which reads as follows:

"Variance in cases of unnecessary hardship.—Upon application in a specific case, the board of review may authorize such variance in the application of the terms of this ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of this ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

Whether the application here is considered under section 24 B or 24 C of the zoning ordinance, it was addressed to

the board's sound discretion. It is now well settled that the decision by a zoning board of review upon matters within its discretion will not be set aside unless it clearly appears that the board acted arbitrarily and abused its discretion. *Sundlun* v. *Zoning Board of Review,* 50 R. I. 108; *Robinson* v. *Town Council of Narragansett,* 60 R. I. 422; *Jacques* v. *Zoning Board of Review,* 64 R. I. 284.

We have examined the record and we cannot say that there was no competent evidence to support the decision of the board and that its decision was arbitrary. Conceding the good faith of the applicants, in proposing to minimize the noise and vibration by insulating the renovated building, nevertheless there was evidence before the board to support its final decision. The evidence showed that, after a hearing in an equity suit in the superior court, a decree was entered whereby the respondents, being petitioners here, were "enjoined and restrained permanently from the further operation of the tamping or pounding machine in the barn of the premises referred to", on the ground that the noise therefrom constituted a nuisance. There was also evidence that no similar manufacturing use, which emitted "dust, odor, . . . noise or vibration", was operated anywhere in that neighborhood, regardless of whether it was zoned for an industrial or business use.

Moreover, although nearby zones permitted business and industrial uses, several well-cared-for premises therein were used solely for residential purposes, as they were before the ordinance was adopted; and the use by the city for a police station, garage and yard was clearly not of the heavy manufacturing industrial type. Further, the value of the expert's testimony, including his qualifications and experience to testify concerning the noise from operating such a tamping machine was for the board to determine under all the circumstances. It appears that an inspection of the premises was made; that the petitioners' lot did not have a sand or gravel bank; and that it did have five other buildings, three

of which were being used for residential or store purposes, or both.

There was no evidence that by the granting of this exception the public convenience and welfare would be substantially served; or that the appropriate use of neighboring property would not thereby be substantially injured; or that a denial of this application would result in special and unnecessary hardship so as to deprive the owners substantially of all beneficial use of their property. The petitioners' contention that the decision of the board was wholly "disconsonant with the entire trend of the community" is not supported by evidence in the record.

The petitioners further contend that they should have been permitted, as an alternative, to continue the manufacture of cement blocks by hand, upon the denial of their application to manufacture by tamping machine. The answer to this contention is that the board did not have before it any application for such a use or exception. The record shows that petitioners' counsel made only an oral request at the end of the hearing that the board "grant us permission to make them by hand during the pendency of this petition"; that such request was made merely to cover the time intervening between the board's hearing and final decision; and that the board did not consider this request as part of the instant application. Upon the application, as filed, and the record, we find the decision of the board to be that the petitioners' application did not include this request, but related solely to the use of a tamping machine in the manufacture of cement blocks and, as such, was denied.

For the reasons stated, the petition for *certiorari* is denied and dismissed; the decision of the respondent board is affirmed; and the papers are ordered to be sent back to the respondent board.

*Nathan Perlman, Mervin N. Bachman,* for petitioners.

*Edward W. Day, City Solicitor,* for respondent.