275 A.2d 637.

JAMES D. HESTER *et ux. vs.* EDGAR H. TIMOTHY *et al.*
JAMES D. HESTER *et ux. vs.* EDGAR H. TIMOTHY *et al.*

APRIL 8, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. We have consolidated these two common-law petitions for certiorari. Their common and ultimate goal is the reversal of a decision of the South Kingstown Zoning Board whereby the Board permitted a parcel of land zoned residential to be used as a trailer campground. The writs issued and the Board's record as well as those of the Superior Court have been certified to us. As will be seen, this litigation might be entitled "The Case of the Mixed-Up Mail."

On August 5, 1969, the heirs of William H. Webster filed an application for an exception to a zoning ordinance whereby they proposed to operate "Camp Sites, For use by campers, self contained, and non self contained" on two contiguous parcels of land that had been owned by the Webster family for over a half century. One parcel contains six acres while the second tract consists of some 258 acres. The small parcel fronts on Worden's Pond Road. The larger parcel lies to its rear. Worden Pond[1] is a large body of fresh water. It runs along the northerly edge of the road.

The Hesters own and reside on property abutting the Webster land. They and several other property owners appeared at the hearing and voiced their objections to the pending application. Fears were expressed that the "campsites" would create sewerage and drainage problems. It was also suggested that the proposed use would constitute a threat to the safety of the children living nearby.

Understandably, the Webster heirs took a contrary view. They presented testimony which showed that the campsites would be adequately illuminated at night; that trash which was to be placed in covered containers would be

---

[1]Some of the exhibits identify the pond as Wordens Pond.

·picked up daily and that certain sanitary facilities would be built. The heirs' spokesman said that five campsites would be established: one on the front parcel with the other four being located somewhere on the back parcel. Their real estate agent, when asked if the campsites would depreciate the surrounding area, replied that "personally he would not hesitate to sell property or take a listing from an abutting property owner."

Since one of the members of the Board stated that he wished to see the land in question, the hearing was adjourned to meet on Saturday morning, August 23, 1969, at the Webster property. The Board viewed the locus and granted the application. The Board stipulated that "no trailer park sites" would be located on the front six-acre parcel. The Board's decision also incorporated certain rules and regulations that the owners intended to adopt once the camp became operable. The rules contain such diversified directives as "Leave sites free of debris," "Respect your neighbor," "No outdoor burning," "All speed limited to five miles per hour on all premises," and "No hunting or target practice on grounds." One of the rules made part of the Board's decision established the launching fee to be charged campers who might bring their boats into the camp area. (One of the heirs operated a boat livery on the shore of Wordens Pond.)

At the time the Board's decision was reached, the applicable statute[2] relating to appeals from the South Kingstown Zoning Board was P. L. 1950, chap. 2490, sec. 9. This statute provided that anyone aggrieved by a decision of a zoning board might seek a review by filing with this

---

[2]Formerly appeals from the decisions of most zoning boards in this state were taken pursuant to the terms of the general enabling statute, G. L. 1956, §45-24-20. For some reason in 1950 the Legislature enacted a special zoning act for the Town of South Kingstown. North Kingstown and Johnston are other municipalities with special acts.

court a petition for certiorari. It also specifies that the petition shall be presented to us, within 30 days after the "making" of the decision.

We have said that the 1950 legislation was applicable after a careful consideration of certain actions taken by the Legislature at its January 1969 session. On May 16, 1969, P. L. 1969, chap. 239, known as "An Act Providing for the Reorganization of the Judicial System of the State of Rhode Island," became law. Section 48 thereof provides that an appeal from a decision of a zoning board shall be heard by the Superior Court in the county in which the board is situated. Any such appeal must be taken by filing a complaint in the Superior Court within 20 days after the decision has been filed in the office of the board. The new appeal provisions became effective at one minute past noon September 15, 1969, and are applicable to all zoning boards in this state regardless of whether they are organized pursuant to the general enabling statute or a special act.

The Hesters, in taking an appeal from the Zoning Board's decision, acted with a superabundance of caution. On September 19, 1969, the 27th day after the Zoning Board's decision, the Hesters filed a complaint in the Superior Court for Washington County. On the same day, their attorney mailed a petition for certiorari to this court. This court and its offices are located on the seventh floor of the Providence County Courthouse. The mailman, like any mortal, can make an error. He did here. He delivered the envelope containing the Hesters' petition to the Superior Court clerk's office. The Superior Court for Providence County is also situated in the same building as we are. Its clerk's office is on the fifth floor.

Once the mail reached the fifth floor, the postman's error was compounded. Someone in the clerk's office opened the

Hesters' envelope and looked at the petition. The Hesters' petition was entitled as follows:

"State of Rhode Island          Supreme Court
Washington, Sc.

"James D. Hester and
Virginia M. Hester
—vs—
Royal Gould,
Harold Burkholder
Bernard Poppe
Kimball Green
Albert Saunders and
Frederick Jackson, Individually
and Collectively as members of
the Zoning Board of Review of
the Town of South Kingstown, and
John E. DiPretoro, Clerk
      "Petition for Writ of Certiorari"

Apparently, it was decided that the petition was a zoning appeal which under the new amendment should have been filed in the Superior Court for Washington County. The words "Supreme Court" were stricken from the title of the petition and the words "Superior Court" were substituted in their place. The petition was then mailed to the clerk of the Superior Court for Washington County. On September 23, 1969, the Hesters' attorney contacted our clerk's office and discovered that the petition had not arrived. The attorney came to the clerk's office immediately and filed a duplicate petition—one day after the 30 day appeal period had expired. We issued our writ on September 26, 1969.

On October 8, 1969, the Board filed a motion in this court to dismiss the petition and quash the writ previously issued. We took no action on this motion because on October 14, 1969, we held a hearing on an order previously entered whereby we gave the parties in all zoning appeals

then pending before us an opportunity to show cause why their appeal might not be remanded to the Superior Court for a hearing in that court pursuant to the provisions of the new Act. If counsel agreed that the pending appeal presented a pure question of law, we would retain the appeal. If the adequacy of the record was questioned, the appeal would be remanded to the Superior Court. It was on this basis that we remitted the Hesters' appeal to the Superior Court. We took this action so that the litigants might have the benefit of that portion of the new legislation which permits the Superior Court to remand the cause to a zoning board for the purpose of taking additional evidence and a possible modification by the board of its decision after its consideration of the new evidence.

The Superior Court's dismissal of Hesters' petition for certiorari was based on the trial justice's conclusion that as of 12:01 p.m. on September 15, 1969, the Supreme Court was divested of jurisdiction to hear any pending zoning appeals. The trial justice dismissed the Hesters' Superior Court appeal on the grounds that their complaint had not been filed within the 20 days of August 23, 1969.

Following the dismissals, we issued the present petitions for certiorari. One is to review the denial of the statutory petition for certiorari; the other is to consider the dismissal of the complaint filed in the Superior Court.

We believe that the dismissals were proper, however, our conclusion is based upon reasons far different than those enunciated by the trial judge. The 1969 amendment constitutes a new statute of limitations for zoning appeals. Long ago we cited the familiar rule of construction that statutes of limitations are to be held to be prospective only in their application unless by their express terms or necessary implication they shall be held to express a legislative intent that retroactive effect is to be given them. *Rotchford* v. *Union R.R.*, 25 R. I. 70, 54 A. 932. Here,

the Legislature expressly declared that the new amendment, though passed in the Spring of 1969, would not take effect until mid-September. This interval was notice to all that a new period of limitation would be in force from and after the latter date. We therefore hold the new statute is applicable to persons aggrieved by zoning board decisions which were filed after 12:01 p.m. September 15, 1969. As of August 23, 1969, the Hesters had a right to file their statutory petition with us anytime within the ensuing 30 days. It is obvious, nevertheless, that our statutory authority to hear the Hesters' petition terminated on September 22, 1969.

While the Legislature may limit, restrict or deny a litigant access to this court, it cannot divest this court of power to review decisions of subordinate tribunals by way of the discretionary common-law certiorari. *Smith* v. *Estate of Catterall,* 107 R. I. 729, 271 A.2d 300; *In re Little,* 103 R. I. 301, 237 A.2d 325; *Nocera Bros. Liquor Mart, Inc.* v. *Liquor Control Hearing Board,* 100 R. I. 644, 218 A.2d 659. We are mindful that the Hesters' petition arrived in the courthouse in due time. The mail carrier's error was understandable. The error in the clerk's office was regrettable. The subsequent actions taken there were unfortunate. The Hesters' petition for certiorari was properly entitled. Any zoning appeal being filed at that time in the Superior Court had to be by way of *complaint, not a petition.* The mistakes made in the Superior Court clerk's office have caused us to fashion our own writ. We shall consider M. P. 919 as common-law certiorari which seeks a review only of the Zoning Board's decision. We have said that certiorari may be used to review a case where it appears that a person's right of appeal has been lost because of illness or some accident for which he was not responsible. *MacKenzie & Shea* v. *R. I. Hospital*

*Trust Co.,* 45 R. I. 407, 122 A. 774. We cannot hold the Hesters liable for the fifth-floor accident.

While petitioners have launched a many-faceted attack on the Board's decision, we shall consider but three of their contentions.

There is no merit in the Hesters' argument that the doctrine of administrative finality prohibits the Board from granting the heirs' application. Although it is conceded that in July 1969 the Board denied an application wherein the Webster heirs sought to use the land in question as a trailer park and campground, it is undisputed that only four members of the Board participated in the July hearing. We have said that under the general enabling act a zoning board shall consist of five members all of whom must participate in the hearing and the board's subsequent decision. *Kent* v. *Zoning Board of Review,* 102 R. I. 258, 229 A.2d 769; *Menard* v. *Zoning Board of Review,* 83 R. I. 283, 115 A.2d 533; *May-Day Realty Corp.* v. *Zoning Board of Review,* 77 R. I. 469, 77 A.2d 539. A five-member board is a jurisdictional requirement and a hearing conducted by four members is a nullity. *Bove* v. *Board of Review,* 95 R. I. 197, 185 A.2d 751. Even though the 1950 special act did not authorize the appointment of an auxiliary member of the board, this defect was cured with the enactment of P. L. 1967, chap. 53. The rule in *Bove* is applicable, therefore, to the South Kingstown Zoning Board. Hence, the July meeting was invalid and the Hesters may not avail themselves of the doctrine of administrative finality.

The Hesters make much of the fact that the zoning ordinance speaks only of "trailers" and not the "campers" referred to in the heirs' application. A trailer park, they say, is for the exclusive use of trailers. Accordingly, the Hesters then take the position that campers cannot be located in any trailer park established in the town. While

there may be many varied kinds of trailers as well as many varieties of campers and the differences between the two could be substantial, we shall leave such a question to another time. We shall assume that any camper which might come onto the Webster property qualifies as a trailer[3] as that term is defined in the ordinance. A trailer, the ordinance reads, is "any structure which is mounted, or designed for mounting on wheels, and which includes accommodations designed for sleeping or living purposes for one or more persons."

Having assumed that the vehicles coming onto the Webster property qualify as "trailers," we turn now to the issue of whether there is any competent evidence in the record to justify the action taken by the Zoning Board. Article IX, sec. 1 of the South Kingstown ordinance states that an applicant must show that if the exception is granted, the public convenience and welfare will be served and that the appropriate use of neighboring property "will not be substantially or permanently injured." Even though respondent Board operates under a special enabling statute, it is no different from other zoning boards in this state that derive their power to grant special exceptions from the general enabling act. It is black letter law in this state that the grant of a special exception is preconditioned upon a showing that the exception sought is reasonably necessary for the convenience and welfare of the public and to satisfy such a standard an applicant is required to show by competent evidence that neither the proposed use *nor its location on the site* would have a detrimental effect

_____

[3] A "camper" has been defined as a compact temporary living unit which sets in the bed of a pickup truck. *Highway Cruisers of Cal., Inc.* v. *Security Industries, Inc.*, 374 F.2d 875 (9th Cir. 1967). While this court may not be considered as expert in the field of the great outdoors, we have in our travels observed other vehicles which are called "campers." They consist of a canvas folding structure mounted on wheels, usually drawn by the family car and are designed for human habitation.

upon public health, safety, welfare and morals. *Nani* v. *Zoning Board of Review,* 104 R. I. 150, 242 A.2d 403.

The record shows that the Webster heirs plan to have five different sites where the trailers or campers can be parked. An exhibit shows a "typical" site as containing approximately 40 units in addition to a building containing sanitary facilities and a coin-operated laundry. The applicants were unable to tell the Board how many people would be using the washrooms and laundry because they had no idea as to the number who would sleep in each trailer. While the Rhode Island Department of Health, under the provisions of chap. 21 of title 23 of the General Laws, will have the final say as to whether the sanitation and sewerage facilities of each site will safeguard the public health, we believe that it was incumbent on the applicants to establish with certainty the exact location on the parcel of each of the five proposed "sites." Until the locations are fixed, it is impossible for the Board to make definitive findings relative to the public convenience and welfare and the effect of the proposed use on the surrounding property. Title 23, chap. 21 is a licensing statute. It authorizes the State Director of Health to promulgate various rules and regulations concerning sanitation and acquatic safety at installations such as trailer parks. According to this statute, a trailer park will not be allowed to function unless and until a state agency is assured that the park's operation will not constitute a threat to the public health. The issuance of this license, however, is no concern of a zoning board. See: *Standish-Johnson Co.* v. *Zoning Board of Review,* 103 R. I. 487, 238 A.2d 754. The Board cannot abdicate its responsibilities to the Health Department. The Board is concerned with zoning as it relates to the use of land. The state law governs activity on the land regardless how the property is zoned. The Board could have, if it so desired, approved the application

subject to the condition that the state authorities approve the sites fixed by the Board.[4]  This was not done.  As the grant now stands, it is conceivable that the five sites ultimately approved by the Health Department could be clustered together in a portion of the back parcel in an area never envisioned by the Board.  The applicants recognized the burden as set forth in *Nani* when they introduced the proposed rules for their trailer camp.  These rules do not satisfy the *Nani* rule.

The real estate agent's testimony is worthless.  The mere fact that he would be willing, once the camp became operative, to take a listing from the Hesters should they wish to sell means nothing.  We are sure that there are many real estate agents, who despite their misgivings as to its location, will attempt to sell a person's property.  The agent's willingness is no evidence that the value of the Hester property will not be depreciated by 200 or more trailers which will be located somewhere on the back parcel.

A zoning board of review when it exercises its fact-finding power acts in a quasi-judicial capacity.  Such facts must be lawfully ascertained.  The board must determine such facts on the basis of competent evidence or on evidence acquired by other proper means. *Melucci v. Zoning Board of Review*, 101 R. I. 649, 226 A.2d 416.  We said in *Melucci* that the term "other proper means" includes information acquired by an on-site inspection of the locus by the board.  The mere recitation, however, in a board's decision that it viewed the subject property does not supply the requisite evidence.  It is the obligation of a zoning board of review, when acting upon an application for re-

---

[4]The Board did make its grant subject to the town's Tourist Accommodations Ordinance. Since we do not take judicial notice of a municipality's ordinances, we have no idea as to its provisions. *Tessier v. LaNois*, 97 R. I. 414, 198 A.2d 142.

lief within its authority, to inform the parties and any reviewing court of the nature and character of the evidence upon which it decided the issue or if such action resulted from its own inspection that it disclose in the record what it saw. See: *DiIorio* v. *Zoning Board of Review,* 105 R. I. 357, 252 A.2d 350.

The record here is completely barren of what the Board saw when it viewed the property. Further, the Board's decision fails to show that it has made the necessary factual determinations and applied the proper legal principles.

Many of the deficiencies described herein can be attributed to the Board. We can also appreciate the heirs' dilemma as to whether they go first to the zoning board or should they first approach the Rhode Island Department of Health. It is impossible, from the record before us, to make a judicial appraisal of the Board's grant in this cause. In fairness to all concerned, we believe a rehearing is in order.

In Miscellaneous Petition No. 919, the petition for certiorari is granted; the decision of the Board is quashed without prejudice to the applicants to have their application considered de novo, and the records certified are ordered returned to the respondent Board with our decision endorsed thereon.

In Miscellaneous Petition No. 920, the petition for certiorari is denied; the writ heretofore issued is quashed and the records are remanded to the Superior Court.

*Smith & Smith, Z. Hershel Smith, Edward M. Botelle,* for petitioners.

*William H. Leslie, Jr., Hogan & Hogan, Thomas S. Hogan,* for respondents.