DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the City of Providence ("Board"), which granted Thayer Realty Trust ("Thayer Realty") and Shark Sushi Bar Grill ("Shark") (collectively, "Applicants") a dimensional variance for parking relief in connection with the alteration of a commercial space to be used as a restaurant. Appellant G. Dale Dulgarian, in his capacity as Trustee of the Krikor S. Dulgarian Trust of December 22, 1960 ("Appellant" or "Mr. Dulgarian"), seeks reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69. For the reasons set forth herein, the Court affirms the Board's decision. *Page 2 
 I Facts and Travel
Thayer Realty is the owner of real property located at 275 Thayer Street in Providence, Rhode Island, and identified as Providence Tax Assessor's Plat 13, Lot 29 (the "Property"). The approximately 4898 square foot property is located within a C-2 district and is occupied by a 2370 square-foot one-story building utilized for commercial space.[1] The Providence Zoning Ordinance (the "Zoning Ordinance") defines a C-2 district as general commercial zone "intended for commercial areas that serve Citywide needs for retail, service and professional office establishments." Zoning Ordinance § 101.2. A restaurant less than 2500 square feet in size is permitted in a C-2 district. Id. at § 303, Use Code 56.1. Shark leased the commercial building on the Property, intending to renovate the entire 2370 square-foot structure in order to create a legally permissible 131-seat restaurant.
The Property is already recognized as legally nonconforming by parking. This status exempted the Property from supplying five parking spaces otherwise required under § 703.2 of the Zoning Ordinance. See Zoning Board of Review Resolution No. 9307, May 28, 2008 (the "Decision"). The expansion or intensification of a building or structure nonconforming by parking is permitted under the Zoning Ordinance, provided that additional parking is supplied in accordance with applicable parking requirements. Zoning Ordinance § 205.1. Pursuant to § 703.2 of the Zoning Ordinance, a restaurant in a C-2 zone requires one parking space per every four seats. See § 703.2, Use Codes 56.1 and 57.1. Thus, thirty-three parking spaces would be required for a restaurant with *Page 3 
Shark's proposed seating capacity. Because the Property was already exempt from five parking spaces, the planned restaurant would require twenty-eight spaces.
On February 6, 2008, Shark and Thayer Realty submitted an Application for Variance or Special Use Permit (the "Application") to the Board, seeking relief from the additional parking requirements under § 702.3 of the Zoning Ordinance. (Compl. at ¶ 6.) Specifically, Applicants sought parking relief for all 28 required spaces because the building was constructed — prior to the existence of the Zoning Ordinance — up to the property line and without any parking. (Tr. at 52.) Prior to a hearing before the Board, the Department of Planning and Development (the "Planning Department") reviewed the Application and found the Applicants' request for relief to be excessive. (Planning Department Recommendation, April 22, 2008.) The Planning Department recommended that a variance be approved for half of the amount of spaces requested, and that the Applicants be required to demonstrate arrangements for the additional spaces required. Id.
On April 22, 2008, the Board held a duly noticed public hearing during which the Application was considered. (Compl. at ¶ 7.) Counsel for the Applicants stated that Shark proposed the establishment of a 131-seat "upscale sushi and grill bar" at the Property to be called Shark Sushi Bar Grill. (Tr. at 50-51.) Counsel further acknowledged that due to the construction of the building to the property line, in conjunction with the known parking "issues" along the Thayer Street business area, the Applicants were requesting a variance from the parking requirements under the Zoning Ordinance.[2] (Tr. at 51-52.) The Applicants also introduced a witness, Mr. Peter Casale, *Page 4 
whom the Board recognized as an expert.[3] (Tr. at 54.) Mr. Casale testified as to the lack of parking available at the Property, the Applicants' efforts to obtain noncontiguous parking, and the general characteristics of the Thayer Street business area. (Tr. at 55-65.)
Several other individuals addressed the Board regarding the Application. Mr. Raymond Hugh, on behalf of Shark, described the general renovations being conducted at the Property and estimated his capital investment in the project to be "well over $700,000." (Tr. at 67.) Mr. Hugh also predicted that the majority of patrons of the restaurant would be college students already located within the vicinity of Thayer Street. (Tr. at 66.) Mr. Joe Dalompa, the contractor for the restaurant project, testified in general terms about the work already conducted to convert the commercial space into the restaurant. (Tr. at 84.) Mr. Dalompa estimated the cost of the renovations to be "around $350,000 to $400,000."
Nearby business owners also testified at the hearing. James Levitt, the owner of a Thayer Street retail shop called "Details," testified that in his opinion the proposed restaurant would have a beneficial effect on the parking situation along Thayer Street. (Tr. at 82.) Mr. Levitt expected the restaurant to "greatly lessen the parking that was generated by the demand of Dunkin' Donuts," and that "since Dunkin' Donuts [has] closed, [there has been] more than ample parking in the morning." Id. Also in support of the Application was Andrew Miprelis, owner of the nearby Paragon restaurant. Mr. *Page 5 
Miprelis indicated that he planned to expand his establishment in the near future, and would expect similar parking relief as that requested by the Applicants. (Tr. at 82-83.)
Several individuals testified against the Applicants' request for zoning relief. Antoinette Breed, a 30-year resident of the College Hill area, [4] opposed the Applicants' request for a dimensional variance for relief from parking. Ms. Breed was particularly concerned with the precedent such a variance would set in the neighborhood, leading to further overcrowding and congestion in the College Hill residential area in which Thayer Street is located. (Tr. at 69-70.) In addition, Ms. Breed believed that the Property had "no identifiable unique characteristics and that the hardship from which the Applicants [sought] relief [was] due to the general characteristic[s] of the surrounding area." (Tr. at 70.) Ms. Breed also contended that granting the variance would confer upon the Applicants an unfair advantage, alter the general characteristics of the surrounding area, and impair the intent of the Zoning Ordinance and the City's Comprehensive Plan. (Tr. at 70.)
G. Dale Dulgarian, the Appellant in the instant matter, also testified against the Application during the hearing. Mr. Dulgarian expressed concern about further increasing the demand for off-street parking and the discouraging effect said increase would have on potential Thayer Street patrons. (Tr. at 72.) Particularly, Mr. Dulgarian argued that "Thayer Street will lose the vibrancy it currently has" as a result of continued increases in demand for parking. Id. In addition, Mr. Dulgarian testified in regard to a commissioned study released just prior to the hearing that addressed parking and traffic *Page 6 
concerns in the Thayer Street commercial area.[5] (Tr. at 71-77.) Other concerns Mr. Dulgarian articulated included that the proposed restaurant would be a "destination restaurant" and that Thayer Street does not require another food establishment. (Tr. at 77.) Instead, Mr. Dulgarian suggested that another type of establishment be considered for the Property in order to promote "balance" in the area. (Tr. at 80.)
The Board also read into the record two letters submitted in opposition to the Application: one written by Mr. Jerry West, an abutter, and one by the College Hill Neighborhood Association. Both letters addressed the existing parking congestion in the Thayer Street commercial district and how approval of the requested variance would exacerbate the parking shortage problem. (Tr. at 170-72.)
At the conclusion of the April 22, 2008 hearing, the Board voted unanimously to approve the requested dimensional variance. The Board's written decision, Resolution 9307, filed on May 28, 2008, granted the Applicants a dimensional variance for relief from the parking requirements of § 703.2 of the Zoning Ordinance. In doing so, the Board relieved the Applicants from providing 28 off-street parking spaces. Mr. Dulgarian timely appealed the decision to this Court on June 17, 2008.
 II Standard of Review
Section 45-24-69 vests the Superior Court with jurisdiction to review a zoning board's grant of an application for a variance. Section 45-24-69(d) provides: *Page 7 
 The [Superior] Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"The Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions." Restivo v.Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level." Id. (quoting Lett v.Caromile, 510 A.2d 958, 960 (R.I. 1986)). Rather, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979).
`"Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance.'" Lischio v. Zoning Bd. of Review of the Townof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981)). In short, a reviewing court may not *Page 8 
substitute its judgment for that of the board if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill RealtyAssocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quotingApostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). It is well settled that if there is some evidence to support the board's findings, [the Court] will not disturb them. May-Day Realty Corp. v. Board ofAppeals of Pawtucket,92 R.I. 442, 444, 169 A.2d 607, 608 (1961) (citing Laudati v.Zoning Bd. of Review of Barrington,91 R.I. 116, 161 A.2d 198 (1960)). In contrast, when a question of law is presented, the Court conducts its review of that issuede novo. Tanner v. Town Council,880 A.2d 784, 791 (R.I. 2005).
 III Analysis
The Appellant contends that the Board erred in granting a dimensional variance to the Applicants for several reasons. First, the Appellant maintains that the grant of relief from additional parking requirements for buildings or structures already nonconforming by parking is prohibited pursuant to § 205 of the Zoning Ordinance. The Appellant further asserts that even if the Zoning Ordinance allows for such relief, the dimensional variance was not the least relief necessary.[6] Additionally, the Appellant argues that the relief sought by the Applicants was due to the general characteristics of the surrounding Thayer Street commercial area and not the unique characteristics of the Property. Finally, the Appellant challenges the Board's decision as arbitrary and capricious. *Page 9 
 A The Board's Authority
The Appellant initially contends that the Board acted in excess of its authority and in violation of ordinance provisions when it granted the dimensional variance from parking requirements stipulated in § 205 of the Zoning Ordinance. Specifically, the Appellant maintains that the language of the Zoning Ordinance is clear and unambiguous on its face in that it prohibits intensification of a building nonconforming by parking absent complete provision of the necessary additional parking. On the contrary, the Board argues that the Zoning Ordinance does not expressly limit the Board's authority to grant relief from such requirements.
Rhode Island courts equally apply the rules of statutory interpretation to the construction of a zoning ordinance when determining the law and its applicability to the facts.Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981). Therefore, courts give clear and unambiguous language in an ordinance its plain and ordinary meaning. Pawtucket TransferOperations, LLC, v. City of Pawtucket, 944 A.2d 855, 859. "[W]hen the language of a statute or a zoning ordinance is clear and certain, there is nothing left for interpretation and the ordinance must be interpreted literally." Mongony, 432 A.2d at 663. "When a statute is ambiguous, however, [the Court] must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature."Harvard v. Pilgrim Health Care of New Eng., Inc. v. Rossi,847 A.2d 286, 290 (R.I. 2004).
Article II of the Zoning Ordinance governs nonconformance, which is defined in Section 200 as follows: "[a] nonconformance is a building, structure, sign or parcel of *Page 10 
land, or use thereof, which does not conform to the use or dimensional regulations set forth in this Ordinance, but was lawfully existing, as provided herein." Section 205 of the Zoning Ordinance specifically applies to buildings and structures nonconforming by parking. "A building or structure is considered nonconforming by parking if the lawfully established use of the building or structure does not meet the parking requirements of Article VII."[7] Zoning Ordinance § 205. The enlargement or intensification of a structure nonconforming by parking is addressed in § 205.1 and reads as follows:
 Addition Enlargement, Expansion and Intensification — A building or structure nonconforming by parking, may be added to, enlarged, expanded or intensified provided additional parking space is supplied to meet the requirements of Article VII for such addition, enlargement, expansion or intensification. The number of additional parking spaces supplied shall be the difference between the number of spaces required for the building or structure including such addition, enlargement, expansion or intensification, and the number of spaces required for the previous use of the building or structure; each calculated in accordance with the requirements of Article VII. (emphasis added).
The additional parking requirements mandated for enlargements and intensification of a structure nonconforming by parking also apply to the change in use of such structures. Zoning Ordinance, § 205.2(A).[8] These additional off-street parking requirements are designated in § 703.2 of the Zoning Ordinance. As mentioned above, "Eating and *Page 11 
Drinking" establishments, such as Shark's restaurant, require 1 parking space per "4 seats or people accommodated, whichever is greater." Sec. 703.2, Use Codes 56.1 and 57.1.
The Appellant argues that because neither §§ 205.1 nor 205.2(A) expressly gives the Board authority to relieve an applicant of these additional parking requirements, such relief cannot be granted. Specifically, the Appellant contends that the "shall be" language of § 205 must be given its plain and ordinary meaning. The Board counters with an opposing interpretation of the Zoning Ordinance. Because other sections[9] concerning nonconforming buildings contain language explicitly prohibiting the Board's authority to grant relief, the Board argues that the absence of such language in § 205 indicates the Board's authority is not limited in regard to buildings nonconforming by parking.[10]
Though mindful that the Rhode Island Supreme Court strictly construes the scope of nonconforming uses, the Appellant's argument nevertheless must fail. Town of Richmond v. Wawaloam Reservation,Inc., 850 A.2d 924, 934-35 (R.I. 2004) (quoting RICOCorp. v. Town of Exeter, 787 A.2d 1136, 1144-45) ("We strictly construe the scope of nonconforming uses because we view them "`as detrimental to a zoning scheme, and the overriding public policy of zoning * * * is aimed at their reasonable restriction and eventual elimination'"). Whether or not the language of § 205 itself should be *Page 12 
construed to afford the Board authority to grant relief from the additional parking required under § 205, however, need not be decided by this Court. Section 707 of the Zoning Ordinance explicitly empowers the Board with such authority. Pursuant to § 707, the Board, upon application, may modify any of the requirements within Article VII — Parking and Loading.[11] The Board may grant such a modification by special use permit pursuant to § 902 of the Zoning Ordinance. Zoning Ordinance § 707. Section 902.4 enables the Board to authorize, in specific cases, special use permits and specifies the criteria the Board must consider in issuing such a permit.
Based on the abovementioned provisions of the Zoning Ordinance, it is clear that the Board had the authority to grant the relief from the additional parking required under § 205 and designated under § 703.2 of the Zoning Ordinance. Section 205 directly refers to the requirements of Article VII. Section 707 explicitly allows the Board to modify said requirements by authorizing a special use permit pursuant to § 902.[12] Thus, the Appellant's challenge of the Board's authority to grant the parking relief in this matter must fail.
 B. The Zoning Board's Decision
Having determined that the Zoning Ordinance expressly confers upon the Board the authority to grant relief from additional parking required under § 205, this Court must now review the Board's approval of the Application in accordance with the standards set *Page 13 
forth in § 45-24-69(d). In reviewing the Application, the Board treated the request as one for a dimensional variance and utilized the criteria set forth in §§ 903.3(A)(1)-(4) and 902.3(B)(2) of the Zoning Ordinance.[13] See Decision at ¶ 2. Indeed, all parties involved have regarded the Application as one for a dimensional variance since the inception of this matter.[14]
However, § 707 of the Zoning Ordinance explicitly states that any requested modification of requirements within Article VII be effectuated by means of a special use permit pursuant to § 902. Such a modification by special use permit may be granted by the Board where the conditions or circumstances provide substantial reasons to justify such action. See Zoning Ordinance § 701. Thus, it appears that the Board reviewed the instant Application, as well as prior similar requests, under a different legal standard.
The Rhode Island Supreme Court has expressly distinguished among the three recognized categories of relief that a zoning board may award — a "true" variance, [15] a deviation, [16] and an exception[17] — and has delineated the applicable burdens of proof associated with each form of relief. See Bamber v. ZoningBd. of Review of Foster, 591 A.2d 1220 (R.I. 1991). A "true" variance is relief to utilize land for a use not permitted under the applicable zoning ordinance. Id. at 1223 (citingWestminster Corp. v. Zoning Bd. of Review of Providence,103 R.I. 381, 385-86, 238 A.2d 353, 356-57 (1968)). *Page 14 
Conversely, a deviation affords relief from restrictions, such as setback and area requirements, that govern a permitted use.Bamber, 591 A.2d at 1223; Northeastern Corp. v. Zoning Bd.of Review of New Shoreham, 534 A.2d 603, 605 (R.I. 1987). An exception is similar in nature to a deviation in that it generally pertains to requirements of a permitted use. Bamber,591 A.2d at 1223. However, an exception is relief explicitly allowed under an applicable zoning ordinance, Bamber,591 A.2d at 1223, and "contemplates a permitted use when under the terms of the ordinance the prescribed conditions therefor are met."Kraemer v. Zoning Bd. of Review of Warwick,98 R.I. 328, 331, 201 A.2d 643, 644 (1964) (citing Harrison v.Zoning Bd. of Review of Pawtucket,74 R.I. 135, 59 A.2d 361 (1948)).
In requesting a "true" variance, a petitioner seeks to use the land for a purpose not ordinarily permitted. Thus, such a petitioner must satisfy the "unnecessary hardship" standard, which requires a showing of deprivation of all beneficial use of the property.See G.L. 1956 § 45-24-41(d)(1); see also Bamber,591 A.2d at 1223. On the contrary, a petitioner seeking a deviation "need only demonstrate an adverse impact amounting to more than a mere inconvenience" in order to obtain relief. Felicio v.Fleury, 557 A.2d 480, 482 (R.I. 1989). This standard was initially pronounced in Viti v. Zoning Bd. of Review ofProvidence, 92 R.I. 59, 166 A.2d 211 (1960), and is commonly referred to as the Viti doctrine.[18] Lastly, a petitioner requesting an exception must establish that the exception sought will substantially serve the public convenience and welfare by demonstrating that "neither the proposed use nor its location on the site would have a detrimental effect upon the public health, safety, welfare and morals." Hugas Corp. v. *Page 15 Veader, 456 A.2d 765, 772 n. 5 (R.I. 1987) (quotingHester v. Timothy,108 R.I. 376, 385-86, 275 A.2d 637, 641-42 (1971); Nani v. ZoningBoard, 104 R.I. 150, 156, 242 A.2d 403, 406 (1968)).
Here, as mentioned above, the Board regarded the Application as one seeking a dimensional variance, also known as a deviation, and determined that the Applicants met the applicable burden of proof. Thus, the Board found that the Applicants' hardship would amount to more than a mere inconvenience in the absence of dimensional relief. (Decision p. 3); Zoning Ordinance § 902.3(B)(2). The Board also set forth findings of fact supported by available evidence that satisfied the requisite standards for both use and dimensional variances under § 902.3(A)(1)-(4). (Decision pp. 2-3.) These standards are as follows:
 902.3 — Variances: To authorize, upon application, in specific cases of hardship, variances in the application of the terms of this zoning ordinance, as provided below:
 (A) In granting a variance, the Board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this Ordinance or the Comprehensive Plan; and *Page 16 
 (4) That the relief to be granted is the least relief necessary
However, it is clear from the language of the Zoning Ordinance itself that a request for relief from the parking requirements under Article VII must be effectuated by means of a special use permit, not a dimensional variance. Zoning Ordinance § 707. The proper analysis the Board must undertake is specified in § 902.4 of the zoning ordinance, and existed at the time of the Board's decision as follows:
 902.4 — Special Use Permits: To authorize, upon application, in specific cases, special use permits, pursuant to Section 303 and other applicable provisions of this Ordinance. The Board may impose such conditions regarding the proposed building, structure, use or otherwise, as it deems appropriate. To authorize a special use permit, the Board must first:
 (A) Consider the written opinion from the Department of Planning and Development.
 (B) Make and set down in writing specific findings of fact with evidence supporting them, that demonstrate that:
 (1) The proposed special use permit is set forth specifically in this Ordinance, and complies with any conditions set forth therein for the authorization of such special use permit;
 (2) Granting the proposed special use permit will not substantially injure the use and enjoyment of nor significantly devalue neighboring property; and
 (3) Granting the proposed special use permit will not be detrimental or injurious to the general health, or welfare of the community. *Page 17 
Section 902.4(B)(3) embodies the appropriate burden of proof an applicant must meet in requesting relief by special use permit, or exception.[19]
Generally, a zoning board's failure to apply the proper legal standard to the relief requested constitutes an error of law sufficiently prejudicial to a petitioner's substantial rights so as to merit reversal and remand. See Hugas,456 A.2d at 770-71. However, such a remedy typically results from a zoning board's application of a stricter standard than an ordinance warrants. See eg. id. (trial justice erred in upholding the board's denial of application evaluated under the more rigorous use variance standard and in not remanding the case for reconsideration under the special exception standard); seealso Rich v. Zoning Bd. of Appeals,53 A.D.2d 672, 672, 384 N.Y.S.2d 862, 862-63 (1976) (matter remanded to the board for consideration of petitioner's application as one for a special permit when the board denied application after applying a stricter standard than was warranted). A remand may also be appropriate when a less strict standard is applied by a zoning board in approving an application. See Battaglia v.Gray, No. NM95-277, 1997 WL 839901 (R.I. Super. Ct. Mar. 18, 1997) (remand proper when zoning board approved application after erroneously utilizing "more than mere inconvenience" standard as opposed to more strict "unnecessary hardship" analysis).
Here, the Board applied a stricter standard in reviewing the Application. However, the Board ultimately approved the Applicants' request for relief under this more stringent analysis. While the Court is mindful that the Board examined the Application as one for a dimensional variance, it is clear from a review of the hearing *Page 18 
before the Zoning Board that the Applicants produced sufficient evidence to establish entitlement to the requested relief under a special use permit analysis. Furthermore, it is well established in this jurisdiction that a court may sustain a correct decision even if it was reached through faulty reasoning or mistake of law.Mesolella v. City of Providence,439 A.2d 1370, 1373 (R.I. 1982) (citing Berberian v. Rhode IslandBar Ass'n, 424 A.2d 1072 (1981); Souza v. O'Hara,121 R.I. 88, 395 A.2d 1060 (1978)); see also Thibodeau v.Metropolitan Property and Liab. Ins. Co.,682 A.2d 474, 475 (1996); Augustine v. Langlais,121 R.I. 802, 806, 402 A.2d 1187, 1189 (1979). After review of the record, this Court finds that the Board reached the right result, albeit employing improper reasoning, and holds that the Board's approval of the Application was not clearly erroneous in light of substantial evidence in the record.
 1 Special Use Permit Analysis
A zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review. G.L. 1956 § 45-24-61; Bernuth v. Zoning Bd. of Review ofNew Shoreham, 770 A.2d 396, 401 (R.I. 2001) (citations omitted). "[W]hen the zoning board of review fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances."Bernuth, 770 A.2d at 401 (quoting Irish Partnership v.Rommel, 518 A.2d 356, 359 (R.I. 1986)). The court may not substitute its judgment for that of the zoning board if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill RealtyAssocs., 841 A.2d at 672 (quoting Apostolou,120 R.I. at 509, 388 A.2d at 825). *Page 19 
Considering the evidence of the record in light of the appropriate standard for authorizing special use permits in accordance with § 902.4 of the Zoning Ordinance, the Court finds that the Applicants were entitled to their requested relief. Section 902.4(A) requires the Board to consider the Planning Department's written decision in examining an application for a special use permit. Both the hearing transcript and the Board's Resolution evidence the Board's consideration of the Planning Department's recommendation that parking relief be approved for half of the amount requested. (Decision p. 1; Tr. at 84-85.)
Section 902.4(B) sets forth the specific criteria an applicant must satisfy in order to obtain relief by special use permit. First, the proposed special use permit must be expressly allowed pursuant to the Ordinance itself and must comply with any conditions set forth therein for the authorization of such a permit. Zoning Ordinance § 902.4(B)(1). As discussed above, § 707 of the Zoning Ordinance explicitly gives the Board the authority to grant a special use permit modifying parking and loading requirements under Article VII. The conditions for authorization of such a permit, set forth in § 707.1 of the Zoning Ordinance, are (1) that the circumstances provide substantial reasons to justify issuance, and (2) that the recommendation of the Traffic Engineer be requested. It should be noted that such a recommendation is only advisory in nature. Zoning Ordinance, § 707.1.
Here, the Board made sufficient findings as to the conditions and circumstances that provide substantial reasons to justify issuance. The Board considered at length the characteristics of the Property, as well as the surrounding area, that made provision of *Page 20 
off-street parking an impossibility.[20] After a review of the record presented to the Board, consideration of the Application, assessment of witness testimony, and a site inspection, the Board found (1) that the subject building covered the majority of the Property leaving no open land to provide parking, (2) that it is "nearly impossible" to obtain off-street parking in the Thayer Street area, (3) that any use of the Property permitted in a C-2 zone would require some relief from the parking requirements, (4) that the area is compromised of existing commercial establishments without off-street parking, and (5) that while the area is that of a "mixed use," the Property is entitled to deference for its commercial use given its existence in a C-2 zone. (Decision p. 2.) These findings are sufficient to satisfy the condition of § 707.1(1) for authorization of a special use permit.
As delineated above, subsection (2) of § 707.1 stipulates that the recommendation of the Traffic Engineer be requested. However, this recommendation is only advisory and within the Board's discretion to consider the facts and conclusions presented within such a study. Zoning Ordinance, § 707.1. The general rule is that statutory requirements comprising the essence of a statute are mandatory.Gryguc v. Bendick, 510 A.2d 937 (R.I. 1986) (quoting Townof Tiverton v. Fraternal Order of Police,118 R.I. 160, 164, 372 A.2d 1273, 1275 (1977) (citing 2A Sutherland,Statutory Construction § 57.03 at 416 (4th ed. Sands 1973))). Given the advisory nature of the Traffic Engineer's recommendation, this requirement under the Ordinance is directory in nature, as opposed to mandatory. Thus, failure to comply with this provision is not fatal to the Board's conclusions. Town of Tiverton,118 R.I. at 164-65, 372 A.2d at 1275-76. *Page 21 
Section 902.4 (B)(2) sets forth additional criteria that must be considered in the issuance of a special use permit. Specifically, the Board must find that granting the special use permit will not "substantially injure the use and enjoyment of nor significantly devalue neighboring property." Zoning Ordinance § 902.4(B)(2). The Board made sufficient findings as to this standard when concluding, under the dimensional variance analysis, that granting the parking relief would not alter the general character of the surrounding area. (Decision p. 2.) The Board found based on the evidence as well as the personal knowledge of its members (1) that the use of a 131-seat restaurant is permitted in a C-2 zone, (2) that the Property was located on a "well traveled and pedestrian oriented street already containing a significant mixture of retail, institutional and residential uses," (3) and that the surrounding area is that of a pedestrian nature with many students and employees traveling to Thayer Street on foot. (Decision p. 2.) In addition, the Board found that requiring the Applicants to demolish part of the structure to provide parking on the Property would alter the character of the neighborhood and be "far more disruptive" to the neighboring property. (Decision p. 3.)
Section 902.4(B)(3) sets forth the burden of proof associated with relief classified as an exception. Pursuant to this section, an applicant must show, and the Board must find, that granting the proposed special use permit will not be "detrimental or injurious to the general health, or welfare of the community." Zoning Ordinance § 902(B)(3). Based on the available evidence submitted by the Applicants, the Board concluded with essentially the same language required to grant a special use permit that the requested relief posed "neither a detrimental effect upon the surrounding properties nor [would be] incompatible with the surrounding properties." (Decision p. 4.); see also Toohey v. *Page 22 Kilday, 415 A.2d 732, 737 (R.I. 1980) (quoting Hester v.Timothy, 108 R.I. 376, 385-86, 275 A.2d 403, 406 (1971)) ("applicant only must show that `neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals'"). The Board made findings of fact sufficient to support this conclusion. The injury contested in this matter is the effect of a potential exacerbation of parking shortages on the community. While the Board acknowledged the objectors' argument that granting the requested relief would likely exacerbate the known parking issues in the Thayer Street area, [21] the Board noted that "solving the parking problems of all Thayer Street is not the Applicant[s]' burden." (Decision p. 3.) The Board found that virtually any commercial use of the Property would require relief from parking requirements. (Decision p. 3.) Furthermore, the Board found that the area surrounding the Property was significantly pedestrian-oriented.Id.
For the above reasons, this Court finds that the Applicants met their burden for obtaining the requested relief in light of the appropriate standard for authorizing special use permits in accordance with § 902.4 of the Zoning Ordinance. Appellant's assertions that the dimensional variance was not the least relief necessary and that the relief sought by the Applicants was due to the general characteristics of the surrounding Thayer Street area and not the unique characteristics of the Property are not requirements to be considered for a special exception and need not here be considered. *Page 23 
 2 Appellant's Challenge of Board's Decision as Arbitrary and Capricious
Appellant further contends that inconsistency of the Board's past actions concerning similar applications for relief makes the instant grant of relief of an arbitrary and capricious character. The evidence presented by Appellant in support of his contention — Resolution No. 9223, dated August 24, 2007, [22] and Resolution No. 9280, dated February 11, 2008[23] — is not sufficient to meet the Appellant's burden of proving an abuse of discretion. A zoning ordinance vests a zoning board with broad discretionary power. Olson v. Zoning Bd. of Reviewof East Providence, 96 R.I. 1, 4, 188 A.2d 367, 369 (1963). "In the absence of constitutional challenge, a decision upon matters within its discretion will not be set aside unless it clearly appears that the board acted arbitrarily or abused its discretion."Id. (citing Spirito v. Zoning Board of Review,64 R.I. 411, 12 A.2d 727); see also Hall v. Zoning Bd. ofReview of City of Pawtucket,93 R.I. 65, 170 A.2d 912 (1961) (reviewing court will not set aside zoning board's decision, based on some evidence, unless it is clearly arbitrary and unreasonable). The Appellant has the burden of proving that there has been such a clear abuse of discretion.Pistachio v. Zoning Bd. of Review of North Providence,88 R.I. 285, 290, 147 A.2d 461, 464 (1959) (citing Lough v.Zoning Board of Review, 74 R.I. 366, 60 A.2d 839 (1948)).
Here, the Board acted upon its own knowledge and made that fact known in its decision.[24] See Melucci v. Zoning Bd. ofReview of Pawtucket, 101 R.I. 649, 226 A.2d 416 (1967);see also Kelly v. Zoning Bd. of Review of Providence,94 R.I. 298, 303, *Page 24 180 A.2d 319, 322 (1962) ("[A] board of review may properly act on applications for an exception on the basis of knowledge that it has acquired through the making of an inspection of the property to which the application refers"). Such knowledge is probative evidence as long as the record contains some reasonable disclosure as to the knowledge so acquired and a board's action pursuant thereto.Kelly, 94 R.I. at 303, 180 A.2d at 322 (citingBuckminster v. Zoning Board of Review,68 R.I. 515, 30 A.2d 104); see also Goldstein v. Zoning Bd.of Review of Warwick, 101 R.I. 728, 227 A.2d 195 (1967).
The arbitrary and capricious analysis is specific to the instant decision by the Board. A zoning board possesses jurisdiction to evaluate the application before it and is required to "prescind[] from wisdom of previous exceptions or variances." Sewall v.Zoning Bd. of Review of Barrington,93 R.I. 109, 114, 172 A.2d 81, 84 (1961) (appellant's contention that board's denial of application for relief subsequent to prior grants of similar relief constituted an abuse of discretion held to be without merit). This Court is satisfied that the record reveals competent evidence to support the Board's findings, which are not arbitrary or capricious.
 IV Conclusion
For the above reasons, this Court finds that the Zoning Board of Review for the City of Providence in its decision of May 28, 2008, though based upon erroneous reasoning, ultimately reached the correct result and thus is not affected by error of law in view of the substantial evidence of the record as a whole. This Court finds that the Board's decision was not arbitrary and capricious. Substantial rights of the Appellant *Page 25 
have not been prejudiced. Accordingly, the decision of the Board is affirmed. Counsel shall submit an appropriate order for entry.
[1] The Property was previously the site of a Dunkin Donuts and a clothing apparel shop. These two commercial areas within the building have been combined to form one restaurant space. The restaurant — Shark Sushi Bar Grill — is currently in operation.
[2] Counsel for Applicant contended that 32 parking spaces would be required under the Zoning Ordinance; however, the correct calculation using `1 space per 4 seats' results in a 33-parking space requirement.
[3] The Board members did not specify in what field they considered Mr. Casale to be an expert. Mr. Casale testified that his background included "30 years in construction, 15 years in code enforcement as a building inspector, two years as chief of the department of Inspections and Standards of the Zoning Division . . . [and][c]urrently certified alternate building official with the State of Rhode Island." (Tr. at 54-55.) No objections ever were raised, however, about his testimony. See City ofProvidence v. Estate of Tarro,973 A.2d 597, 601 n. 5 (R.I. 2009).
[4] Ms. Breed, although a resident of the area, was not an abutter within the 200-foot radius surrounding the restaurant at issue. (Tr. at 69.)
[5] The Board was neither provided with, nor had previously read, the study referenced by Mr. Dulgarian during the hearing. Mr. Dulgarian was not a party to the research or formulation of the study. (Tr. at 73, 76.) The Board acknowledged that Mr. Dulgarian was testifying only to something to which he had no personal knowledge and merely had read. (Tr. 73, 75-76.) Counsel for the Applicants objected to Mr. Dulgarian's testimony on the grounds of hearsay and relevancy. (Tr. at 81.)
[6] The Appellant also argues that the Board's findings of fact on this particular issue were insufficient.
[7] Article VII of the Zoning Ordinance governs Parking and Loading.
[8] Section 205.2(A) reads as follows:
 Change of Use — All zones other than D zones: A building or structure nonconforming by parking, may be changed to a different use, pursuant to all other provisions of this ordinance, provided that where such change in use increases the parking requirements in accordance with Article VII, additional parking spaces shall be supplied. The number of additional parking spaces supplied shall be the difference between the number of spaces required for the proposed use and the number of spaces required for the previous use. In the event that the new use requires less parking spaces than the previous use, no additional parking spaces need be supplied. However, none of the existing parking spaces shall be eliminated unless the number of spaces required by this ordinance for the new use are provided. Zoning Ordinance § 205.2(A).
[9] These two other sections — §§ 201 and 202, governing buildings and structures nonconforming by use and by dimension, respectively — both contain provisions explicitly limiting the authority of the Board to grant variances. The language reads as follows: "[i]t is intended that existing nonconforming uses shall not justify further departures from this Ordinance for themselves, or for any other properties." Zoning Ordinance § 201. Similarly, § 202 reads: "[i]t is intended that existing buildings or structures that are nonconforming by dimension shall not justify further departures from this Ordinance for themselves or for any other property." Sec. 202.
[10] The Board's statutory interpretation argument seems to be based on the maxim of contract interpretation expressio unius estexclusio alterius, meaning `the expression of the one is the exclusion of the other.' Gorman v. Gorman,883 A.2d 732, 738 n. 9 (R.I. 2005) (citing 5 Corbin onContracts, Interpretation of Contracts, § 24.28 at 315-16 (Margaret N. Kniffin, rev. ed. 1998).
[11] Specifically, § 707.1 — provides that
 "[a]ny requirements in this Article with the exception of Section 707.2 may, upon application, be modified by the Board where the conditions or circumstances provide substantial reasons to justify such action. The recommendation of the Traffic Engineer shall be requested in each case but such recommendation shall be only advisory."
[12] Interestingly, the Appellant alleges that the Board should have issued a special use permit as opposed to a dimensional variance in this matter. (Compl. ¶ 16.) However, neither party discuss this avenue of relief in its supporting memoranda.
[13] It appears that the Board has historically considered applications for relief from parking requirements as requests for dimensional variances. See eg. Resolution No. 9280, February 11, 2008; Resolution No. 9223, August 24, 2007.
[14] The Applicants checked the box "Variance — Dimensional" on the Application itself and attached an Exhibit addressing the criteria set forth in §§ 902.3(A)(1)-(4) and 902.3(B)(2) of the Zoning Ordinance. In addition, those who testified at the hearing did so in terms of said criteria. Furthermore, even the Planning Department's recommendation referred to the relief requested as a "variance from the parking requirement." (Planning Department Recommendation, April 22, 2008.)
[15] In many states, including Rhode Island, a use variance is considered under the standard for a "true" variance. See
3 Edward H. Ziegler, Rathkopf's The Law of Zoning andPlanning, § 58.4 (2009).
[16] In Rhode Island, a dimensional variance is considered under the standard for a deviation. Lischio v. Zoning Bd. of Reviewof North Kingstown, 818 A.2d 685, 691 (R.I. 2003)
[17] A special exception, or special use permit, is classified as an exception.
[18] The Viti doctrine is codified at G.L. 1956 § 45-24-41(d)(2), which requires the applicant to demonstrate only "that the hardship [the applicant would suffer] if the dimensional variance is not granted amounts to more than a mere inconvenience."
[19] Section 1000 of the Zoning Ordinance defines "special use" as "[a] regulated use which is permitted pursuant to the special-use permit issued by the Board, pursuant to Section 902.4. Formerly referred to as a special exception."
[20] In recognizing this impossibility, Board Member Wolf commented that "[i]t's a little bit of a magic wand approach to decision making, telling somebody to do something when you know it's not feasible." (Tr. at 180.)
[21] While the Board recognized the objectors' arguments, it is well settled in this jurisdiction that "the lay judgments of neighboring property owners on the issues of the effect of a proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." Salve Regina College v.Zoning Bd. of Review of Newport, 594 A.2d 878, 882 (R.I. 1991) (quoting Toohey v. Kilday,415 A.2d 732, 737 (R.I. 1980)).
[22] In Resolution 9223, the Board declined to grant relief from parking for a proposed new restaurant construction in the Thayer Street area.
[23] In Resolution 9280, the Board declined to grant relief from parking for a residential project that required additional parking for residents.
[24] The record reveals that the Board made a site inspection of the Property.